# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00104-CR

**Pedro Arriaga, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT
### NO. 11,247, HONORABLE TERRY L. FLENNIKEN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Pedro Arriaga guilty of aggravated sexual assault of a child and assessed his punishment at ninety-nine years' imprisonment. *See* Tex. Penal Code Ann. § 22.021 (West Supp. 2007). Appellant contends that the trial court erred by compelling him to be tried in jail clothing and by failing to instruct the jury on the State's burden of proof regarding extraneous misconduct evidence. He also urges that he received ineffective assistance of counsel. We will overrule these contentions and affirm the judgment of conviction.

### Background

The complaining witness, A.L., is appellant's step-granddaughter. A.L. testified that in March 2003, when she was thirteen years old, she spent the night with her grandmother and appellant in their home. The next morning, as she was taking a shower, appellant entered the bathroom, pulled her from the shower, pushed her onto the floor, and sexually assaulted her. A.L.

testified that the assault ended when her grandmother was heard returning home from the grocery store. A.L. said that she told her grandmother what appellant had done, but her grandmother did not believe her. A.L. then called her mother and asked to come home, saying she was sick. Thinking that no one would believe her, A.L. did not make any further outcry until July 2004, when she told her aunt and her mother what appellant had done.

A.L.'s grandmother testified for the defense. She said that she never left the house on the day in question, that A.L. was not alone with appellant on that day, and that A.L. made no outcry to her. The defense also offered evidence that appellant is diabetic and had reported an inability to obtain an erection. In rebuttal, the State offered testimony from a jailer that appellant had been seen masturbating in his jail cell. The jailer also testified that appellant told her, "I shouldn't have done what I did. And I said, no, you shouldn't have. And he said, I shouldn't have raped her."

Appellant does not challenge the sufficiency of the evidence to sustain his conviction. We will discuss the punishment evidence in conjunction with his second issue.

**Jail Clothing**

In his first issue, appellant contends that the trial court erred by compelling him to be tried in jail clothing. The State responds that appellant was not tried in clothes identifiable as "jail clothing," that appellant did not have an absolute right to be tried in the clothing of his choice, and that security concerns dictated the clothes in which appellant was tried.

Appellant's problems with his clothing began the day before trial when "there was a knife found in some clothing that was sent to him" by his family. His attorney apparently did not have time to deliver other clothes that day. We infer that jail authorities provided the clothes

2

appellant was wearing on the first day of trial, which were described as a short sleeved, "plaid and lavender" shirt, white pants, and orange sneakers. Counsel argued that the clothes "would not be appealing on anybody, would not make a good impression for a job interview, much less for the defendant." Counsel said his primary objection was to the sneakers, which he referred to as "orange jail shoes," and asked that appellant at least be allowed to put on boots. The court granted this request, but appellant was unable to wear the boots because of leg shackles.[1] Nothing in the record indicates that the sneakers had any markings on them that would identify them as jail property. It is unclear from the record whether the jury could even see the sneakers, as it appears that appellant was already seated before the jury entered.

An accused is to be provided all the trappings of innocence, including the right not to be tried in identifiable prison clothes. *Estelle v. Williams*, 425 U.S. 501 (1976); *Randle v. State*, 826 S.W.2d 943 (Tex. Crim. App. 1992). Counsel argued below that appellant "has a constitutional right to wear clothing of his choice, whether it be a pink turtleneck or the judge's robe. It's whatever it is that he feels comfortable in." The scope of the right is not that expansive, however. *See Sullivan v. State*, 997 S.W.2d 374 (defendant wore T-shirt with picture of scantily clad woman; wearing less than desirable clothing does not implicate presumption of innocence); *Johnson v. State*, 838 S.W.2d 906, 909 (Tex. App.—Corpus Christi 1992, pet. ref'd) (appellant refused to wear jogging outfit that he was wearing when arrested or "other street clothes" offered by State; trial court

---

[1] A jailer first inspected the boots, then attempted to put them on. Apparently, the shackles could not be removed. These events happened outside the jury's presence. There was no objection to the shackles nor is there an issue raised on appeal. *See Canales v. State*, 98 S.W.3d 690, 691 (Tex. Crim. App. 2001) (assuming error preserved, no harm or prejudice shown when nothing in record indicates that jury ever saw or was aware that appellant was wearing shackles).

denied continuance to allow family to bring choice of clothes; appellant not "compelled" to wear identifiable jail clothing because no right to clothes of choice or particular style). Only clothing that "bears the indicia of incarceration" subverts a defendant's right to the presumption of innocence. *See Randle*, 826 S.W.2d at 946.

An instructive example of such clothing involved clothes that had markings on them that appeared to indicate that they were prison wear. *Scott v. State*, 80 S.W.3d 306, 307 (Tex. App.—Fort Worth 2002, no pet.). Counsel in *Scott* described the defendant's clothes: "He's wearing overalls with a T-shirt under it and orange jail pants. And they also indicate pod 5, pod 6, No. 27, 25. They're clearly jail clothes." *Id*. The State noted that the pants did not say "pod" or "Denton County Jail." The defense responded: "It says P dash 5 and P dash 6." The State agreed with that description. *Id*. The judge allowed the defendant to stand trial dressed in this clothing. The appellate court concluded that, although the jail-issued clothes did not have an express label saying "jail" on them, a juror who saw orange overalls marked P-5, P-6, No. 27, No. 25, would likely surmise that the defendant was wearing jail clothing. *Id*. at 308. "We cannot escape the conclusion that the marked orange overalls 'bore the indicia of incarceration' and, therefore, subverted Appellant's right to a presumption of innocence." *Id*.

Although appellant's clothing may have been less than tasteful and not of his choosing, there is no evidence that the clothes he was required to wear "bore the indicia of incarceration." There is no indication that the sneakers bore any alphabetical or numeric markings that would indicate ownership by an institution such as a jail. Accordingly, appellant was not tried in "jail clothes" such that his presumption of innocence was compromised.

4

Further, the statement that a knife was delivered to appellant in clothing sent by his family was not controverted, nor was there an objection to the use of shackles. Security concerns may place a limit on the right to be tried in non-jail clothing. *United States v. Nicholson*, 846 F.2d 277, 279 (5th Cir. 1988). When security is an issue, even the use of shackles may be allowed. *Deck v. Missouri*, 544 U.S. 622, 632 (2005). It appears that security concerns could have justified a more "institutional" appearance than that actually presented to the jury by appellant's wearing of orange sneakers. *See id.* We overrule appellant's first issue.

## Punishment Charge

In his second issue, appellant contends that the trial court erred by failing to instruct the jury that the State had the burden of proving beyond a reasonable doubt that he was guilty of the extraneous offenses or bad acts introduced in evidence at the punishment phase of the trial. The State agrees that the jury charge should have included such an instruction but argues that the oversight was not reversible error. There was no objection to the punishment charge on this ground.

The State called two witnesses at the punishment stage. One witness, Detective Jose Rizo, testified that appellant had a bad reputation for being peaceful and law abiding. On cross-examination, he testified that he had lived in Bastrop for five years, had known appellant for two years, and appellant had never been convicted of a felony offense.[2]

The State's second punishment witness was J.P., another of appellant's step-granddaughters. J.P., who was twenty-seven years old at the time of trial, testified that when she was

_____

[2] Appellant also called one witness to testify to his good reputation and lack of criminal offenses.

about seven years old, she and her parents lived with her grandmother and appellant in a one-room apartment. She woke up one morning to find appellant "rubbing my privates." She made noises so that appellant would know she was awake, and he stopped. J.P. testified that she felt ashamed and told no one what had happened. About two years later, she and some of her cousins spent the night at their grandparents' house, and they all slept on the floor. J.P. said that she awoke in the middle of the night to find that everyone else had left the room and "the same thing was happening to me." She got up and screamed for her grandmother to wake up, and appellant got dressed. After J.P. returned home, she told her mother what had happened but no charges were ever filed. J.P. testified that on both occasions, appellant touched her through her clothing.

At the punishment stage, evidence may be offered as to any matter the court deems relevant to sentencing, including evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2007). When the court admits evidence of extraneous misconduct by the accused, the court must instruct the jury that it cannot consider this evidence for any purpose unless it is satisfied beyond a reasonable doubt that these prior acts are attributable to the defendant. *Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000). The failure to give this instruction is charge error even in the absence of a request or objection by the defendant. *Id*. But if there was no objection, the error will result in a reversal only if the omission of the instruction was so egregiously harmful to the defendant that it deprived him of a fair and impartial trial. *Ellison v. State*, 86 S.W.3d 226, 228 (Tex. Crim.

6

App. 2002); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (standard of review for charge error).

Egregious harm consists of errors affecting the very basis of the case or that deprive the defendant of a valuable right, vitally affect a defensive theory, or make the case for conviction or punishment clearly and significantly more persuasive. *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991); *Hall v. State*, 937 S.W.2d 580, 583 (Tex. App.—Texarkana 1996, pet. ref'd). The actual degree of harm must be assayed "in light of the entire jury charge, the state of the evidence, including contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. We engage in this assessment to illuminate the actual, not just the theoretical, harm to the accused. *Id*. at 174. Egregious harm is a difficult standard to meet and must be determined on a case-by-case basis. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). An *Almanza* harm analysis is conducted without placing any burden of proof or persuasion on either the defendant or the State. *Warner v. State*, 245 S.W.3d 458, 464 (Tex. Crim. App. 2008).

Appellant argues that a proper burden of proof instruction would have put J.P.'s testimony "in the proper perspective in that the testimony was uncorroborated and consisted of an alleged incident that occurred some 20 years earlier and for which no arrest or prosecution was ever made." He adds that had the jury found that there was a reasonable doubt as to whether he committed the acts of which he was accused by J.P., "the jury would have only been able to consider the victim in the case at hand in arriving at an appropriate punishment. . . . But, as it is, appellant was made to look like a man who had been raping little girls for the last 20 years without the benefit

7

of a limiting instruction that would have at least guaranteed to some extent the veracity of all the allegations against him."

The State used J.P.'s testimony against appellant during closing argument. The prosecutor asked the jury for a sentence of life imprisonment, arguing that "[t]he only way you can deter this man from doing this again is to lock him up because what we know is in 1985 he molested [J.P.] and then again in '87 and then when he brutally raped [A.L.] that was in 2003 and today we're in 2005. What we know is he cannot go 19 years without raping or molesting a child." As appellant argues, a proper instruction on the State's burden of proof would have removed any question as to whether the jury had found J.P.'s testimony to be true beyond a reasonable doubt before considering it in assessing punishment.

On the other hand, J.P.'s testimony was largely undisputed and described conduct by appellant that was similar, if not identical, to the conduct of which the jury had already found him guilty. Appellant's cross-examination of J.P. was brief and served to emphasize that J.P. was testifying to events that happened twenty years ago, and that the acts she described constituted touching through her clothing. Also, the prosecutor did not suggest during argument that the jury did not have to believe J.P.'s testimony beyond a reasonable doubt, and the jury, which had only one day earlier been instructed on the State's burden of proving the elements of the offense beyond a reasonable doubt, was well aware that J.P. was testifying to events that occurred in the fairly distant past and had not resulted in any criminal charges. Nothing in the record suggests that had the jury properly been instructed, it would have disregarded J.P.'s testimony. *Cf. Ellison v. State*, 97 S.W.3d 698, 701 (Tex. App.—Texarkana 2003, no pet.) (op. on remand) (punishment stage testimony that

8

defendant was member of racist and terrorist groups and had committed hate crimes was vigorously disputed at trial; because jury was not properly instructed on State's burden of proof, it was more likely that jury gave consideration and weight to this disputed testimony).

Appellant points out that he had no criminal record and was eligible for probation. He notes that given his age (he was sixty years old at the time of trial) and poor health, the jury effectively imposed a life sentence. But the jury had found appellant guilty of the forcible sexual assault of his own thirteen-year-old step-granddaughter. It would not be unreasonable to believe that the jury would have assessed the same punishment had J.P. not testified at all.

Keeping in mind that egregious harm is a difficult standard to meet, we conclude that the error in the punishment charge did not deny appellant a fair and impartial trial. Issue two is overruled.

**Ineffective Assistance**

In his third issue, appellant contends that his trial counsel was ineffective because he failed to request the instruction on the State's burden of proof discussed above. To prevail on this claim, appellant must show that this error caused counsel's representation to fall below an objective standard of reasonableness and that the deficient performance prejudiced him. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986) (adopting the *Strickland* two-prong test). Unless appellant makes both showings, it cannot be said that his conviction was rendered unreliable by a breakdown in the adversarial process. *Strickland*, 466 U.S. at 687. This standard applies to both the guilt-innocence and the punishment phase of trial. *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

9

When addressing the first prong of the test, a court must review counsel's performance with a high degree of deference. *Strickland*, 466 U.S. at 690; *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). There is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance, and the defendant must overcome the presumption by a preponderance of the evidence. *Strickland*, 466 U.S. at 690; *Andrews*, 159 S.W.3d at 101; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). We determine the reasonableness of counsel's challenged conduct in context, and view it as of the time of counsel's conduct. *Strickland*, 466 U.S. at 690; *Andrews*, 159 S.W.3d at 101. Not every oversight will constitute ineffective assistance. A defendant is entitled to a fair trial, not an error-free trial. *Strickland*, 466 U.S. at 689. While a single egregious error may be sufficient, reviewing courts generally are hesitant to declare counsel ineffective based on a single miscalculation. *Thompson v. State*, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999); *Smith v. State*, 149 S.W.3d 667, 673 (Tex. App.—Austin 2004, pet. ref'd).

A defendant may prevail on an ineffective assistance claim by providing a record that affirmatively demonstrates that counsel's performance was not based on sound trial strategy. *Mallet v. State*, 66 S.W.3d 59, 63 (Tex. Crim. App. 2001). The court of criminal appeals has said that we must assume a strategic motive if any can be imagined, and that we may not find counsel's performance deficient unless the conduct was so outrageous that no competent attorney would have engaged in it. *Bone v. State*, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). If no reasonable trial strategy could justify trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness

10

as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as she did. *Strickland*, 466 U.S. at 690; *Andrews*, 159 S.W.3d at 102.

Appellant argues that there was no rational strategic reason for failing to request an instruction on the State's burden of proving extraneous misconduct evidence beyond a reasonable doubt. The State counters that appellant's attorney could have reasonably concluded that the jury was unlikely to disbelieve J.P.'s testimony even if properly instructed, and that counsel may have chosen to remain silent knowing that this would not preclude raising the charge error on appeal.

Even if we assume that counsel's failure to object to the erroneous punishment charge was an unprofessional error, appellant must satisfy the second prong of the *Strickland* test by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Andrews*, 159 S.W.3d at 102. We have already concluded that the omission of the burden of proof instruction did not deny appellant a fair and impartial trial. We now conclude that it is not reasonably probable that the jury's punishment decision would have been different had appellant's counsel succeeded in having the missing instruction added to the punishment charge. Issue three is overruled.

The judgment of conviction is affirmed.

11

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed:   May 14, 2008

Do Not Publish