ACCEPTED
01-14-00831-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
7/7/2015 2:40:42 PM
CHRISTOPHER PRINE
CLERK

**No. 01-14-00831-CR**
In the
Court of Appeals
For the
First District of Texas
At Houston

——————◆——————

**No. 1411387**
In the 263rd District Court
Of Harris County, Texas

——————◆——————

**RICKY RAMOS**
*Appellant*
V.
**THE STATE OF TEXAS**
*Appellee*

——————◆——————

STATE'S APPELLATE BRIEF

——————◆——————

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

7/7/2015 2:40:42 PM

CHRISTOPHER A. PRINE
Clerk

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**ABBIE MILES**
State Bar No:  24072240
Assistant District Attorney
Harris County, Texas

**Hank Altmiller**
**Lacy Johnson**
Assistant District Attorneys
Harris County, Texas

1201 Franklin, Suite 600
Houston, Texas  77002
Tel.:  713/755-5826
FAX No.:  713/755-5809

ORAL ARGUMENT REQUESTED ONLY IF REQUESTED BY APPELLANT

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 9.4(g) and TEX. R. APP. P. 39.1, the State requests oral argument only if oral argument is requested by the appellant.

## IDENTIFICATION OF THE PARTIES

Pursuant to TEX. R. APP. P. 38.2(a)(1)(A), a complete list of the names of all interested parties is provided below.

Complainant, victim, or aggrieved party:

**Leonardo "Johnny" Adler**

Counsel for the State:

**Devon Anderson** — District Attorney of Harris County

**Abbie Miles** — Assistant District Attorney on appeal

**Hank Altmiller & Lacy Johnson** — Assistant District Attorneys at trial

Appellant or criminal defendant:

**Ricky Ramos**

Counsel for Appellant:

**Melissa Martin** — Counsel on appeal

**Michael P. Fosher** — Counsel at trial

Trial Judge:

**Hon. Jim Wallace** — Presiding Judge

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT…………………….....………..i

IDENTIFICATION OF THE PARTIES……………………………….....……i

INDEX OF AUTHORITIES…………………………………...……………..iii

STATEMENT OF THE CASE………………………………………...…….1

STATEMENT OF THE FACTS……………………………...…………….1

SUMMARY OF THE ARGUMENT………………………....……….....4

REPLY TO APPELLANT'S FIRST ISSUE PRESENTED
Appellant did not suffer egregious harm by the trial court's failure to include a beyond a reasonable doubt instruction regarding the extraneous allegations in the punishment phase of trial because the State conceded in closing arguments that appellant may or may not be a gang member, there was no mention during the punishment phase of the trial of appellant's drug use during the commission of the offense, and the jury assessed a punishment below what the State urged…..............…………………….....4

CONCLUSION……………………………...……………………………..13

CERTIFICATE OF SERVICE…………………….....………………….....14

# INDEX OF AUTHORITIES

**Cases**

*Abdnor v. State,*
  871 S.W.2d 726 (Tex. Crim. App. 1994)....................................................................... 5

*Allen v. State,*
  253 S.W.3d 260 (Tex. Crim. App. 2008) ...................................................................... 11

*Allen v. State,*
  47 S.W.2d 47 (Tex. App. –Fort Worth 2001, pet. ref'd) ..........................................7, 10

*Almanza v. State,*
  686 S.W.2d 157 (Tex. Crim. App. 1984) ....................................................................5, 7

*Ellison v. State,*
  86 S.W.3d 226 (Tex. Crim. App. 2002) ......................................................................7, 11

*Graves v. State,*
  176 S.W.3d 422 (Tex. App.—Houston [1st Dist.] 2004, pet. stricken) ........................ 9

*Guzman v. State,*
  No. 04-02-00198-CR, 2003 WL 22336052 (Tex. App.—San Antonio Oct. 15, 2003,
  pet. ref'd) (mem. op., not designated for publication) .................................................. 10

*Harper v. State,*
  No. 05-04-00004-CR, 2004 WL 2601659 (Tex. App.—Dallas Nov. 17 2004, pet.
  ref'd) (mem. op., not designated for publication) .......................................................... 9

*Huizar v. State,*
  29 S.W.3d 249 (Tex. App.—San Antonio 2001, pet ref'd)………………...……9, 12

*Hutch v. State,*
  922 S.W.2d 166 (Tex. Crim. App. 1996) ...................................................................... 7

*Prenger v. State,*
  108 S.W.3d 501 (Tex. App.—Houston [14th Dist.] 2003, pet ref'd)........................... 5

*Tabor v. State,*
  88 S.W.3d 783 (Tex. App.—Tyler 2002, no pet.) ........................................................ 9

*Walton v. State*,
No. 14-06-00227-CR, 2007 WL 706582 (Tex. App.—Houston [14ᵗʰ Dist.] March 8, 2007, pet. ref'd) (mem. op., not designated for publication) ......................................... 8

**Statutes**

TEX. CODE OF CRIM. PROC. ANN. art. 36.19 (West 2012).............................................5, 7
TEX. CODE CRIM. PROC. 37.07 Sec. 3(a)(1) (West Supp. 2014). ...................................... 6

**Rules**

TEX. R. APP. P. 9.4(g) ...................................................................................................... i
TEX. R. APP. P. 38.2(a)(1)(A) ........................................................................................... i
TEX. R. APP. P. 39.1......................................................................................................... i

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

Appellant was charged with aggravated assault with a deadly weapon, and in one enhancement paragraph, was alleged to have been previously convicted of harassment of a public servant (C.R. 16). Appellant entered a plea of not guilty to the offense, and stipulated that the enhancement paragraph was true (R.R.III 7, R.R.IV 5-6; C.R. 135). The jury found appellant guilty, and sentenced him to confinement for twenty-five years in the Institutional Division of the Texas Department of Criminal Justice (R.R.III 165, R.R.V 44; C.R. 135). A written notice of appeal was timely filed (C.R. 138-139).

———————◆———————

## STATEMENT OF FACTS

The State challenges all factual assertions in appellant's brief and presents the following account of the facts.

Laura Ann Cobb and Leonardo "Johnny" Adler were at home on December 12, 2013, with their nephew Ricky Ramos, appellant, that was over visiting (R.R.III 11-12, 17-18). This was a common occurrence as Laura and Johnny had a good relationship with appellant (R.R.III 13, 15, 52-53).

Johnny was in the kitchen cooking oatmeal (R.R.III 55). Appellant left and came back about an hour later (R.R.III 57). When appellant returned, he entered

through the unlocked door without knocking, which was not unusual (R.R.III 62). Appellant did not seem right when he walked in, he appeared to be "out of it" (R.R.III 62-63). Johnny offered appellant some oatmeal, and asked him if he was okay (R.R.III 63). While Johnny's back was turned to appellant, appellant walked up behind Johnny and stabbed him (R.R.III 64-65). The knife blade broke off inside of Johnny, but appellant was undeterred and began stabbing Johnny with the handle of the knife (R.R.III 67). Appellant stabbed Johnny three to four times (R.R.III 29, 67). Johnny fell to the ground (R.R.III 68). Johnny said to appellant "[w]hate are you doing?[] I didn't do nothing to you" (R.R.III 68). Johnny was able to grab onto appellant and pull him to the ground, and hit him with a pan (R.R.III 72-73).

Laura had taken her medication at 8 p.m. and fell asleep, but was woken up thirty to fort-five minutes later to Johnny yelling "Laura, come get me. Come get me. I'm bleeding." (R.R.III 19-20, 57, 72-73). Laura got up and went into the dining room and saw Johnny on the floor bleeding and "holding onto [appellant]" (R.R.III 20-21, 74). Laura got appellant off of Johnny, and called 911, and told the 911 dispatcher that appellant appeared to be under the influence of "Cush" (R.R.III 23, 25, 76, State's Exhibit 6). Johnny had already lost a lot of blood and could barely talk (R.R.III 25-26). Police arrived shortly (R.R.III 27, 76). The officer tried to slow the bleeding by putting pressure on the stab wound (R.R.III 30, 76). Johnny was in a lot of pain and thought he was going to die (R.R.III 77).

2

Laura saw the handle of a knife on the floor, but could not find the blade until EMS had taken Johnny out of the house (R.R.III 29). The knife did not come from Laura's and Johnny's apartment (R.R.III 48). Once the officers arrived, one officer put pressure on Johnny's stab wound until EMS arrived (R.R.III 30). An ambulance took Johnny from the apartment, but then he was transferred to a life flight helicopter and taken to the Ben Taub Hospital (R.R.III 30-31, 78). Johnny was in the hospital for several days (R.R.III 78). Johnny now has to walk with a cane, and has a scar from the stab wound right by his spine (R.R.III 80, 83).

Officer Brian Ridings of the Pasadena Police Department was on patrol on December 12, 2013, and responded to the scene and took photographs of the scene (R.R.III 104-105). Officer Doug Buckert of the Pasadena Police Department also responded to the scene (R.R.III 124). When he arrived he saw Johnny sitting in a pool of blood (R.R.III 126). He applied pressure to the stab wound (R.R.III 127). Johnny was able to tell Officer Buckert that appellant stabbed him (R.R.III 128). Johnny was in and out of consciousness and Officer Buckert was unsure if Johnny would survive (R.R.III 129-130). Officer Buckert spoke to Laura to try to get a location on appellant (R.R.III 132). Johnny was found hiding in his girlfriend's apartment (R.R.III 134). Appellant's girlfriend asked what was going on, and appellant responded that "he had stabbed his uncle" (R.R.III 135).

During the punishment phase of the trial, the State offered evidence of appellant's prior criminal history, but called no witnesses (R.R.IV 4-7). During the

3

testimony of Jeanette Ramos Adler, appellant's aunt, the State introduced pictures from appellant's Facebook account in which appellant can be seen with "Tango blast" tattoos (R.R.V 24-26). Ms. Adler testified that "Tango blast" was a "prison gang" (R.R.V 26).

——————◆——————

## SUMMARY OF THE ARGUMENT

Appellant did not suffer egregious harm by the trial court's failure to include a beyond a reasonable doubt instruction regarding the extraneous allegations in the punishment phase of trial because the State conceded in closing arguments that appellant may or may not be a gang member, there was no mention during the punishment phase of the trial of appellant's drug use during the commission of the offense, and the jury assessed a punishment below what the State urged. Appellant's point of error should be overruled.

——————◆——————

## REPLY TO POINT OF ERROR

Appellant argues that the trial court erred in not *sua sponte* giving a beyond a reasonable doubt instruction during the punishment phase of the trial regarding extraneous offense evidence. Appellant further argues that he suffered egregious harm as a result of this failure because the evidence of his drug use and gang membership

4

was weak and simply used to inflame the jury into assessing a higher punishment. However, appellant was neither denied a fair or impartial trial nor suffered egregious harm by the trial court's failure to include a beyond a reasonable doubt instruction regarding the extraneous allegations in the punishment phase of trial because the State conceded in closing arguments that appellant may or may not be a gang member, there was no mention during the punishment phase of trial of appellant's drug use during the commission of the offense, and the jury assessed a punishment below what the State urged. Appellant's point of error should be overruled.

**Standard of Review**

In reviewing a claim of jury charge error, the reviewing court must first determine whether error occurred. *Abdnor v. State*, 871 S.W.2d 726, 731-32 (Tex. Crim. App. 1994). If the error is properly objected to, reversal is required if "some harm" occurs. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984); TEX. CODE OF CRIM. PROC. ANN. art. 36.19 (West 2012). "Some harm" simply means that reversal is mandated when it has any impact on the accused. *Id.* However, if the error is not objected to at trial, reversal is required only when the accused "has not had a fair and impartial trial." *Almanza*, 686 S.W.2d at 171; TEX. CODE OF CRIM. PROC. ANN. art. 36.19 (West 2012). This type of error is referred to as "egregious" or "fundamental error." *Almanza*, 686 S.W.2d at 171. The entire record is examined considering the charge, the evidence, arguments of counsel, weight of the evidence, contested

5

evidence, and anything else that is relevant in the record when looking for whether some harm or egregious harm occurred. *Id.*

## Analysis

Section 37.07 Sec. 3 of the Texas Code of Criminal Procedure states that

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant , his general reputation, his character, the circumstances of the offense for which is being tried, and notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act…

TEX. CODE CRIM. PROC. 37.07 Sec. 3(a)(1) (West Supp. 2014).

In the present case, the State introduced photographs from appellant's Facebook page of appellant with gang tattoos (R.R.IV 25-26, R.R.VI 97). Additionally, Laura, the 911 caller, made an assertion that appellant was on "Cush" and this call was played for the jury in the guilt-innocence phase of trial (State's Exhibit 6). Appellant complains about these extraneous allegations.[1]

Appellant argues that "the State offered evidence that [appellant] was 'high on something' and [appellant's] possible affiliation with the 'Tango Blast prison gang'" and error occurred because "the charge did not include an instruction regarding the

---

[1] Appellant's brief at 3.

6

appropriate burden of proof necessary before the jury could consider the extraneous acts in assessing punishment."[2]

Appellant made no objection to the punishment charge (R.R.V 28). "[T]he trial court is required, when punishment phase evidence of extraneous offenses or bad acts evidence is admitted, to *sua sponte* instruct the jury on the reasonable-doubt standard of proof concerning the extraneous offenses and bad acts." *Allen v. State*, 47 S.W.3d 47, 50 (Tex. Crim. App. 2001). Trial counsel failed to object to the omission of the instruction in the jury charge, the degree of the harm must be egregious to warrant reversal. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002); *Almanz*, 686 S.W.2d at 171. The harm is evaluated considering the effect of the omission of the instruction, not the effect of the extraneous evidence. *Ellison*, 86 S.W.3d at 227. The *Almanza* Court explained that errors that result in egregious harm are errors that affect "the very basis of the case," divest the defendant of a "valuable right," or "vitally affect a defensive theory." *Almanza*, 686 S.W.2d at 172.

A proper harm analysis considers the following four factors when conducting an *Almanza* harm analysis: (1) the jury charge itself; (2) the state of the evidence including contested issues and the weight of the probative evidence; (3) counsel's arguments; and (4) any other relevant information in the entirety of the record. *Id.*; *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996); TEX. CODE OF CRIM. PROC. ANN. art. 36.19 (West 2012).

---

[2] Appellant's brief at 5.

When applying the four factors to the present case, appellant was not egregiously harmed by the omission of a beyond a reasonable doubt instruction regarding extraneous offenses during the punishment phase of trial. Although the jury charge did not include a burden of proof instruction on extraneous offenses, it did include an instruction that the State must prove the enhancement paragraphs beyond a reasonable doubt[3] (C.R. 131). Further, the jury charge reiterated that the "burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant" (C.R. 131). *See Walton v. State*, No. 14-06-00227-CR, 2007 WL 706582, at * 3 (Tex. App.—Houston [14th Dist.] March 8, 2007, pet. ref'd) (mem. op., not designated for publication) (holding that the defendant did not suffer egregious harm when the trial court failed to give a burden of proof instruction regarding extraneous offenses in the punishment phase of trial because the jury was instructed that "'[t]he burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant' [and t]here is no reason to believe that the jury did not remember the reasonable doubt and burden of proof definitions and apply them to the uncontested extraneous charge as well.").

Appellant faced a range of punishment of five to ninety-nine years in prison, but received a twenty-five year sentence from the jury despite the State's

---

[3] The full instruction told the jury that "[t]he prosecution has the burden of proving the allegations in the penalty paragraphs beyond a reasonable doubt. The prosecution does not have to prove the allegations in the penalty paragraphs beyond all possible doubt. The prosecution's proof must exclude all reasonable doubt concerning the penalty paragraphs" (C.R. 131).

recommendation of a thirty year sentence (C.R. 128, R.R.V 29). *See Graves v. State*, 176 S.W.3d 422, 435 (Tex. App.—Houston [1st Dist.] 2004, pet. stricken) *citing Tabor v. State*, 88 S.W.3d 783, 788-89 (Tex. App.—Tyler 2002, no pet.) (holding that failure to give a reasonable doubt instruction regarding pen packets in the punishment phase of trial was harmless considering the jury assessed a punishment below what the State requested). The jury assessed punishment at twenty five years imprisonment, which is well below the median of the range of punishment appellant was facing for being a "backstabber" who attacked his own uncle who was in poor health (C.R. 128, 135, R.R.V 36, 38). *See Huizar v. State*, 29 S.W.3d 249, 251 (Tex. App.—San Antonio 2001, pet ref'd) (reasoning that the defendant did not suffer egregious harm from failure to give reasonable doubt instruction because the sentence was within the range of punishment).

During closing arguments in the punishment phase of trial, appellant highlighted his mental health problems, and the lack of parental involvement in his life (R.R.V 30). Appellant then urged that simply because he made a mistake "his life should not be thrown away" (R.R.V 32). The State also urged the jury to consider "the mitigation the defense has provided" and "the circumstances surrounding [appellant's] birth" when assessing appellant's punishment (R.R.V 35-36). The State highlighted appellant's criminal history including his prior violent offenses, and although he may not be highly intelligent, the evidence showed that he knew right from wrong (R.R.V 39-42). *See Harper v. State*, No. 05-04-00004-CR, 2004 WL 2601659, at * 2 (Tex.

App.—Dallas Nov. 17 2004, pet. ref'd) (mem. op., not designated for publication) (holding that the facts of the case and the defendant's criminal history clearly warranted the sentence of fifteen years, and thus the defendant could not have suffered egregious harm from the absence of a reasonable doubt instruction regarding extraneous offenses). The State mentioned appellant's Facebook page, but when asking the jury to sentence appellant to significant prison time did not do so by emphasizing the complained of evidence of gang membership and drug use, but by emphasizing the violent nature of the aggravated assault for which appellant had just been convicted and urging that evidence as the main "reason to keep [appellant] incarcerated for a longer period of time (R.R.V 41). *See Allen v. State,* 47 S.W.2d 47, 50 (Tex. App. –Fort Worth 2001, pet. ref'd) (holding that facts surrounding the offense supported the twenty year sentence imposed, and thus the defendant did not suffer egregious harm).

Appellant was not harmed the introduction of the allegation that he was on "Cush" when he committed the offense during the guilt-innocence phase of trial[4], thus appellant's assertion that the evidence of appellant's drug use was "mere speculation" is irrelevant because this allegation was never mentioned in the punishment phase of trial. *See Guzman v. State*, No. 04-02-00198-CR, 2003 WL 22336052, at *4 (Tex. App.—San Antonio Oct. 15, 2003, pet. ref'd) (mem. op., not

---

[4] The State did mention the allegation that appellant was under the influence of Cush in its closing argument during the guilt-innocence phase of trial (R.R.III 157).

designated for publication) (holding that the defendant suffered no harm despite the lack of beyond a reasonable doubt instruction when the State did not use the extraneous evidence in the punishment phase of trial).

When the State did spend time talking to the jury about the allegation that appellant was a gang member, the State conceded that "[m]aybe [appellant is] just a really big Astros fan or maybe he's a Tango Blast which is, in the words of his aunt, a prison gang" (R.R.V 42). Thus, the State did not assert that appellant was a gang member as if it were a foregone conclusion, but rather presented it as an open question for the jury to do with the information, what they wished. It cannot be said that appellant suffered egregious harm when even the State conceded that the allegation that appellant was a gang member may not be true. The State's own characterization of the gang evidence certainly undercuts appellant's argument that "[t]he State introduced [the evidence of the gang membership] merely to goad the jury into making an improper reference of gang membership and inflame them into assessing a greater sentence."[5] *Compare Allen v. State*, 253 S.W.3d 260, 267-68 (Tex. Crim. App. 2008) (finding no egregious harm when the case for punishment was not made clearly more persuasive by error) *with Ellison v. State*, 97 S.W.3d 698, 701 (Tex. App. –Texarkana 2003, no pet.) (holding that the defendant was egregiously harmed because the sentence could have been substantially affected by evidence that he committed hate crimes).

---

[5] Appellant's brief at 9.

Appellant was neither denied a fair or impartial trial nor suffered egregious harm by the trial court's failure to include a beyond a reasonable doubt instruction regarding the extraneous allegations in the punishment phase of trial because the State conceded in closing arguments that appellant may or may not be a gang member, there was no mention during the punishment phase of trial of appellant's drug use during the commission of the offense, and the jury assessed a punishment below what the State urged. *See Huizar*, 29 S.W.3d at 251. Appellant's point of error should be overruled.

———————◆———————

## CONCLUSION

It is respectfully submitted that all things are regular and that the conviction should be affirmed.

**DEVON ANDERSON**
District Attorney
Harris County, Texas

/s/ Abbie Miles

**ABBIE MILES**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 755-5826
TBC No. 24072240
Miles_abbie@dao.hctx.net
Curry_Alan@daohctx.net

## CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that this computer-generated document has a word count of 3,663 words, based upon the representation provided by the word processing program that was used to create the document.

/s/ Abbie Miles

**Abbie Miles**
Assistant District Attorney

13

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing instrument has been mailed to the

appellant's attorney at the following address on July 7, 2015:


Melissa Martin
Assistant Public Defender
1201 Franklin, 13th Floor
Houston, Texas  77002


/s/ Abbie Miles

**ABBIE MILES**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
TBC No. 024072240
Miles_abbie@dao.hctx.net
Curry_Alan@dao.hctx.net

Date:  July 7, 2015