**Bobby Joe ELLISON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–99–00186–CR.**

Court of Appeals of Texas, Texarkana.

Submitted Dec. 23, 2002.

Decided Jan. 8, 2003.

Clement Dunn, Longview, for appellant.

William M. Jennings, Gregg County District Attorney, Andrea M. Thompson, Appellate Assistant District Attorney, Longview, Betty Marshall, Assistant State Prosecuting Attorney, Austin, for appellee.

Before GRANT, ROSS and CORNELIUS,* JJ.

## OPINION

Opinion by Justice CORNELIUS (Retired).

This case is before us on remand from the Texas Court of Criminal Appeals. In our prior decision, we affirmed Ellison's conviction for aggravated robbery, but remanded the case to the district court for a new trial on punishment because the trial court failed to *sua sponte* instruct the jurors that, before they could consider certain prior offenses and bad acts allegedly committed by Ellison, they must find beyond a reasonable doubt that Ellison actually committed those acts. *See Ellison v. State*, 51 S.W.3d 393 (Tex.App.-Texarkana 2001), *rev'd*, 86 S.W.3d 226 (Tex.Crim.App.

---

* William J. Cornelius, Chief Justice, Retired, Sitting by Assignment

2002). The Court of Criminal Appeals reversed our decision because we used an improper analysis in determining whether the trial court's error was harmful.

At the punishment stage of Ellison's trial, the State introduced evidence of certain prior offenses and bad acts committed by Ellison, and in questions on cross-examination of defense witnesses the prosecutor referred to other crimes and bad acts allegedly committed by Ellison. Reference to all of these crimes and bad acts was made under the authority of TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon Supp.2003). These other crimes and bad acts included a driving while intoxicated conviction in Rusk County; the burglary of a constable's car in Blanco County and the theft of a pistol and a rifle; various instances of possessing and using drugs, including marihuana, powder cocaine and crack cocaine, methamphetamine, and alcohol; attempted burglary of an Automated Teller Machine (ATM) in Gregg County; and a driving while intoxicated charge in Missouri. Although Ellison did not testify personally at the trial, he did not dispute that he committed these specific offenses and acts, and in fact, several of his defense witnesses conceded that he had done them. The State also produced two Federal Bureau of Investigation (FBI) agents who testified to statements that Ellison had made in a videotaped interview before trial. The videotaped interview was six to seven hours long, so the State and defense counsel agreed at trial that the FBI agents could testify to their recollection of Ellison's statements in the interview rather than having to play all of the videotapes at the trial. The agents testified that Ellison was given *Miranda*[1] warnings before the interview and that all requirements of Texas and federal law were complied with in order to make Ellison's statements admissible in evidence.

One of the FBI agents testified that he mostly worked on investigating violent crimes, which, among other things, include carjackings, bank robberies, kidnappings, and fugitive cases. He said one of his jobs was working domestic terrorism cases, that such cases can be white hate crimes, and he referred to the Oklahoma City bombing case as an example of a domestic terrorism case. The agent testified that, in the videotaped interview of Ellison, Ellison admitted that he had participated in hate crimes and that he had a relationship with the Aryan Brotherhood. The agent said that Ellison spoke about several events in which he participated with the Aryan Brotherhood in several different states and that they included several acts of violence. The agent said Ellison admitted participating in various hate crimes in North Carolina and Missouri as a participant with the Aryan Brotherhood. The other FBI agent testified he heard Ellison's videotaped interview, and he was able to confirm the truth of some of Ellison's statements about specific offenses he committed, but none of these confirmations related to Ellison's Aryan Brotherhood connection or to his commission of hate crimes.

In addition, the State, in cross-examining Ellison's former employer, who testified for the defense, asked the witness if Ellison had told him he was a member of the Aryan Brotherhood and if he had told him he had shot a "black man" in the face. When the witness answered "no" and said that Ellison, as far as he knew, was a nice man, the prosecutor asked the witness, "do nice guys randomly execute or attempt to execute black people because of the color of their skin?" The former employer told the prosecutor that Ellison never told him

---

**1.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the things that he had mentioned. The State asked another defense witness who testified in Ellison's behalf whether she knew if Ellison was a member of the Aryan Brotherhood, and she answered, "No." The State questioned Ellison's mother on cross-examination if she knew anything about her son's involvement in a hate group, specifically the Aryan Brotherhood, and she said, "No," but said Ellison told her one time there was no hope for him because he had "sold his soul to the devil."

The State argues that Ellison admitted all the bad acts and offenses referred to at the punishment hearing, so the lack of a reasonable doubt instruction did not harm him. Ellison, through his witnesses, did admit the DWIs, the burglary and theft, and the drug and ATM offenses. But as to his association with hate groups such as the Aryan Brotherhood and terrorist groups, Ellison did not admit in court that they were true; rather, the FBI agents testified that Ellison admitted to them in his out-of-court videotaped interview, which was not introduced in evidence at trial, except through the agents' testimony. Ellison's defense counsel tried to prove that Ellison's statements in the interview about these matters were untrue and that Ellison made them only to please the FBI agents so they would give him cigarettes and food during the long interview. In addition, defense counsel vigorously argued to the jury that it was unreasonable to believe Ellison would belong to a racist terrorist group considering that he has had a long and cordial relationship with African–Americans, and his girlfriend of long-standing has a child who is half African–American.

The State cites us to several cases where the courts have held that the failure to give the reasonable doubt instruction at the punishment phase of the trial was not harmful. *See Allen v. State,* 47 S.W.3d 47 (Tex.App.-Fort Worth 2001, pet. ref'd); *Brown v. State,* 45 S.W.3d 228 (Tex.App.-Fort Worth 2001, pet. ref'd); *Martin v. State,* 42 S.W.3d 196 (Tex.App.-Fort Worth 2001, pet. ref'd); *Frazier v. State,* 15 S.W.3d 263 (Tex.App.-Waco 2000, no pet.). But in all these cases, the prior offenses and bad acts of the defendant were proven by overwhelming evidence and were largely undisputed. That is not the case here. While many of the acts alleged against Ellison were undisputed, his engagement in hate crimes and involvement in hate and terrorist group activities were not disputed.

 The standard for determining harm in cases like this is whether the appellant has suffered egregious harm because of the lack of the reasonable doubt instruction. In deciding that issue, we must try to illuminate the actual, not just the theoretical, harm to Ellison, and therefore, we must assess the degree of harm in the light of the entire jury charge, the state of the evidence, including contested issues and the weight of the probative evidence, the argument of counsel, and all other relevant information revealed by the record as a whole. *Ellison v. State,* 86 S.W.3d 226.

We noted in our prior opinion that the highly inflammatory and prejudicial nature of the disputed conduct by Ellison likely had a serious influence on the jury's assessment of punishment. It is also likely, we believe, that the jury was more prone to give consideration and weight to these disputed extraneous activities in the absence of an instruction that they must find them true beyond a reasonable doubt, than they would have if such an instruction had been given. Because of this, we find that the failure to give the instruction in this case at the punishment stage caused Ellison egregious harm.

For the reasons stated, we reverse the judgment as to punishment only and remand the case to the trial court for a new trial on punishment. Because we are requiring a new trial on punishment, we need not discuss Ellison's contention that he received ineffective assistance of counsel at the punishment phase.

The conviction is affirmed, but the judgment on punishment is reversed and the cause is remanded to the trial court for a new trial on punishment only.