**Frelin Danilo ORELLANA, Appellant**

v.

**The STATE of Texas, Appellee**

**NO. 14–14–00701–CR**

Court of Appeals of Texas,
Houston (14th Dist.).

Opinion filed March 10, 2016

538

**540**

Sarah Vernier Wood, Houston, TX, for Appellant.

Eric Kugler, Houston, TX, for Appellee.

Panel consists of Justices Boyce, Busby, and Brown.

## OPINION

J. Brett Busby, Justice

A jury convicted appellant Frelin Orellana of aggravated assault. Appellant received the maximum sentence authorized by law, twenty years' confinement and a fine of $10,000. In this appeal, appellant asks us to reverse his sentence and remand for a new punishment hearing.

Among other issues, appellant argues that the trial court erred in omitting an instruction that the jury could consider evidence of extraneous bad acts only if proven beyond a reasonable doubt. After clarifying when such an instruction is required with respect to evidence regarding a defendant's gang membership, we hold that the omission of such an instruction here did not cause appellant egregious harm. Appellant also contends that his trial counsel 'provided ineffective assistance by failing to object to the State's comment on appellant's failure to testify. Although the State's comment was improper, appellant has not shown on this silent record that counsel had no reasonable trial strategy for failing to object. Having considered each of appellant's issues and concluded that none warrants a new punishment hearing, we affirm.

### BACKGROUND

Evidence introduced during the guilt phase of trial showed that an intoxicated appellant was riding his bicycle in front of the entrance to the Las Americas apartments in southwest Houston. Appellant encountered Maria Estrada, who was returning to the apartment complex from a nearby grocery store. Estrada's sister and two of her young children accompanied her. Appellant began accosting them, threatening to "kick [their] [expletive]" and preventing them from passing through the entrance to the apartment. When Es-

trada told appellant that the entrance is for everyone's use, appellant said he "didn't give a damn" and warned that they did not know who they were involved with. He followed the women around the complex. Estrada and her sister saw appellant reach for and "cock" his gun as he told them he was going to send them all to hell. The women left the grocery cart and entered the apartment complex office, where they reported appellant's actions to the manager and called the police.

Houston Police Officer Emanuel Contreras responded to the call and spoke to Estrada. He soon located appellant on the second floor of the apartment complex and detained him. Estrada positively identified appellant. Officer Contreras received consent to search the apartment of appellant's ex-girlfriend, where he discovered Estrada's grocery bags. Police located the shopping cart outside of the apartment on the ground floor of the stairwell, but they failed to locate appellant's gun. Appellant later gave police a videotaped statement in which he admitted that he had a gun located on his waist when he encountered Estrada and that he took her groceries. Appellant was charged with aggravated robbery, but the jury found him guilty of the lesser offense of aggravated assault.

### ANALYSIS

On appeal, appellant presents four issues related to the punishment phase of his trial. He asserts the following errors: (1) the trial court failed to give a reasonable-doubt instruction for extraneous offenses; (2) the trial court erred in admitting gang evidence; (3) the State engaged in improper jury argument by referring to appellant as a "MS–13 thug"; and (4) trial counsel was ineffective for failing to object to the State's comment on appellant's demeanor when he told the jury to "[l]ook

into his eyes. There's nothing there. He doesn't care." We address each issue in turn.

### I. Appellant has not shown egregious harm from the omission of a reasonable-doubt instruction regarding extraneous bad acts.

During the punishment phase, the trial court admitted appellant's jail disciplinary records for fighting, failing to be properly dressed, and refusing to obey an order. The court also admitted evidence of appellant's gang affiliation through photos of his tattoos and the testimony of Deputy Riley Jackson of the Harris County Sheriff's Office Gang Intelligence Unit. Appellant contends that the court erred by failing to include in its charge *sua sponte* an instruction that the jury could only consider this evidence in assessing punishment if it believed beyond a reasonable doubt that appellant committed the acts.

Although it is clear that the jail disciplinary records are evidence of bad acts by appellant, the record is unclear as to whether the State sought to introduce the gang evidence as a bad act or as relevant to appellant's character. Because the purpose for which the gang evidence was admitted affects the type of limiting instruction required, we begin by examining the legal principles governing the admission of gang evidence at the punishment phase.

### A. The jury instruction that must accompany gang-related evidence at punishment varies depending on the purpose of the evidence.

Article 37.07 of the Code of Criminal Procedure provides:

[E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion re-

garding his character, the circumstances of the offense for which he is being tried, and, not withstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a)(1) (West 2013). The statute explicitly requires any extraneous crimes or bad acts to be shown beyond a reasonable doubt. *Id.*

Another authority addressing the admissibility of gang-membership evidence is the Texas Court of Criminal Appeals' decision in *Beasley v. State*, 902 S.W.2d 452, 456 (Tex.Crim.App.1995). *Beasley* allows admission of evidence regarding a defendant's membership in a gang even if it does not link the accused to the bad acts or misconduct generally engaged in by gang members, so long as the fact-finder is (1) provided with evidence of the defendant's gang membership, (2) provided with evidence of character and reputation of the gang, (3) not required to determine whether the defendant committed the bad acts or misconduct, and (4) asked only to consider the evidence for the reputation or character of the accused. *Id.* at 457. This Court has applied *Beasley* to determine the admissibility of gang evidence for a character purpose. *See Aguilar v. State*, 29 S.W.3d 268, 270 (Tex.App.—Houston [14th Dist.] 2000, no pet.) (concluding that police officer's testimony met *Beasley* cri-

teria); *see also Ho v. State*, 171 S.W.3d 295, 305 (Tex.App.—Houston [14th Dist.] 2005, pet. ref'd) ("Evidence of a defendant's gang membership is relevant because it relates to character.... [I]t is not necessary to link the defendant to the bad acts if [the four *Beasley* factors are met].").

Over a decade after *Beasley*, the First Court of Appeals decided *Sierra v. State*, in which the court concluded *Beasley* is not the only gate through which gang-membership evidence may be introduced. 266 S.W.3d 72, 78 (Tex.App.—Houston [1st Dist.] 2008, pet. ref'd).[1] The court noted that *Beasley* is a 1995 opinion that relied on the pre–1993 version of the Texas Code of Criminal Procedure, which prohibited the admission of unadjudicated extraneous bad acts at the punishment phase. *Id.* In 1993, the Texas Legislature amended the Code to make this type of evidence admissible. *Id. Sierra* concluded that under the revised Code, article 37.07 § 3(a) governs the admissibility of evidence at the punishment phase of a non-capital criminal trial. *Id.* at 79.

The *Sierra* court reviewed the State's evidence of gang affiliation using *Beasley* and article 37.07. *Id.* at 77–80. The court concluded that the State failed to meet the third and fourth prong of *Beasley* because the trial court did not instruct the jury that (1) it was not required to determine whether appellant committed the bad acts engaged in by his gang, and (2) it could only consider evidence of appellant's gang membership when evaluating his character and reputation. *Id.* at 78. The trial court did, however, provide the jury an instruc-

---

1. It is important to note that *Sierra* does not conclude *Beasley* is bad law, nor has the Court of Criminal Appeals overruled *Beasley*. In fact, multiple courts have applied *Beasley* since article 37.07 was amended and *Sierra* was decided. *Jessop v. State*, 368 S.W.3d 653, 693–94 (Tex.App.—Austin 2012, no pet.); *Delacerda v. State*, 425 S.W.3d 367, 401–02 (Tex.App.—Houston [1st Dist.] 2011, pet. ref'd); *Segovia v. State*, 467 S.W.3d 545, 553 (Tex.App.—San Antonio 2015, pet ref'd).

tion not to consider extraneous crime or bad-act evidence if there was reasonable doubt that the defendant committed the crime or act. *Id.* at 80. By providing the reasonable-doubt instruction, the court held, the gang evidence was properly limited under Article 37.07, and therefore it was properly admitted.

■ In summary, the statute and cases demonstrate that gang-membership evidence can properly be admitted for different purposes at the punishment phase under Article 37.07 § 3(a)(1). If the evidence tends to show a bad act by the defendant, the jury must be instructed that it cannot consider evidence of an alleged bad act unless it is satisfied beyond a reasonable doubt that the act is attributable to the defendant. *Sierra,* 266 S.W.3d at 79; *see Huizar v. State,* 12 S.W.3d 479, 484 (Tex. Crim.App.2000). If the evidence is offered as relevant to the defendant's character, however, the evidence must meet the first two prongs of *Beasley* in order to be admitted, and the jury must be given instructions consistent with the third and fourth prongs of *Beasley.* *See* 902 S.W.2d at 457.

**B. The omission of a reasonable-doubt instruction did not cause egregious harm.**

■ In this case, the jury charge did not include either the instructions prescribed in *Beasley* or an instruction requiring proof of bad acts beyond a reasonable doubt. But appellant did not object to the jury charge or request that any such instructions be included. Because both parties agreed at oral argument that the instruction required in this case should not be determined under *Beasley,* we will assume without deciding that the evidence of appellant's gang membership was offered to show a bad act. We therefore review the gang evidence—as well as the jail disciplinary records—to determine whether failure to include the reasonable-doubt in-

struction was error and whether that error caused sufficient harm to require reversal. *Martinez v. State,* 313 S.W.3d 358, 367 (Tex.App.—Houston [1st Dist.] 2009, pet. ref'd).

■ A defendant is not required to request that the trial court give a reasonable-doubt instruction under Article 37.07 § 3(a)(1) or object to the court's failure to do so. *Huizar,* 12 S.W.3d at 484. Although the statute does not specifically address the submission of a reasonable-doubt instruction, such an instruction is necessary to ensure that the jury properly considers evidence of extraneous bad acts under the statute's prescribed reasonable-doubt standard. *Id.* Without this instruction, a defendant has no safeguard against a jury applying a lesser standard of proof. Thus, the trial court erred in failing to instruct the jury on the reasonable-doubt standard *sua sponte.* *Zarco v. State,* 210 S.W.3d 816, 821 (Tex.App.—Houston [14th Dist.] 2006, no pet.).

■ Because appellant failed to object to the jury charge or request the reasonable-doubt instruction, he can obtain reversal only if the error caused appellant egregious harm. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). Under this high standard, the judgment may be reversed only if the error is so egregious and creates such harm that it deprives the accused of a fair and impartial trial. *Id.* at 172. An accused is denied a fair and impartial trial when the error (1) went to the very basis of the case, (2) denied the accused a valuable right, or (3) vitally affected his defensive theory. *Sansom v. State,* 292 S.W.3d 112, 128 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). The degree of harm is reviewed in light of the entire jury charge, the state of the evidence, counsels' argument, and any other relevant information revealed by the

trial record as a whole. *Almanza,* 686 S.W.2d at 171; *see also Villarreal v. State,* 453 S.W.3d 429 (Tex.Crim.App.2015). Appellant must show he suffered actual rather than theoretical harm. *Cosio v. State,* 353 S.W.3d 766, 777 (Tex.Crim.App.2011).

Reviewing the state of the evidence, we first examine whether the State's evidence of appellant's guilt was clear, direct, and unimpeached. *Zarco,* 210 S.W.3d at 824 (concluding that "clear, direct, and unimpeached testimony" during the guilt-innocence phase of trial contributed to a finding that defendant was not egregiously harmed by lack of sentencing-phase instruction regarding burden of proof for extraneous offenses). At the guilt-innocence phase of trial, the State introduced unimpeached testimony from complainant Estrada, who described appellant's assault. In addition, the arresting officer testified that appellant matched the description of the suspect, was discovered in the vicinity of the crime, and was positively identified by Estrada at the crime scene. The officer also testified that he discovered Estrada's groceries in the apartment of appellant's ex-girlfriend. The State also presented appellant's videotaped statement, in which he admits to having a gun when he encountered Estrada and taking her groceries. These multiple sources of unimpeached evidence established a strong case for appellant's guilt.

During the punishment phase, the State offered appellant's jail disciplinary records, which included appellant's signature indicating his plea of guilty to each infraction. Appellant did not present any evidence challenging the State's version of the bad acts. He objected to the introduction of the records under Texas Rule of Evidence 403 but did not contest their validity or accuracy. Despite the lack of reasonable-doubt instruction in the jury charge, the jury likely believed beyond a reasonable doubt that the bad acts described in the disciplinary records had in fact occurred because the evidence of the infractions was clear, strong, direct, and unimpeached.

The State also focused on appellant's gang affiliation, showing the jury multiple photographs of appellant's gang-related tattoos and asking Deputy Jackson to discuss the general reputation of the MS-13 gang. The trial court found Deputy Jackson qualified to testify as an expert on the issue of gangs, the history of gangs, and gang tattoos. Deputy Jackson reviewed the photos and described to the jury the significance or lack of significance of appellant's many tattoos. The photos showed several tattoos on appellant's abdomen, fingers, and forearm that clearly state "MS 13." Another tattoo on appellant's leg depicts the MS-13 hand sign. Deputy Jackson concluded his testimony by stating appellant has clear MS-13 related tattoos on his body.[2] Appellant's counsel did not impeach Deputy Jackson's testimony on cross-examination and did not offer any evidence to call appellant's gang affiliation into doubt. The evidence establishing appellant's affiliation to the MS-13 gang was therefore also clear, strong, direct, and unimpeached. Accordingly, the state of the evidence weighs against the conclusion that appellant suffered egregious harm from the omission of a reasonable-doubt instruction. *See Martinez,* 313 S.W.3d at 367–68 (holding that where defendant did not present evidence challenging State's

---

**2.** The State was also careful not to link appellant to any specific crimes the gang committed. On multiple occasions during his testimony, the State clarified that the gang's activity was not attributable to appellant, but merely described the gang's general purpose and reputation. This minimized any risk of the jury improperly considering the gang testimony.

version of extraneous offenses, jury likely believed the evidence beyond a reasonable doubt, and inclusion of reasonable-doubt instruction "would not have made a difference in how the jury considered the evidence").

Turning to closing arguments of the sentencing phase, the State referred to appellant's gang affiliation as part of a general theme of law enforcement. The State asked the jury to "take an MS–13 thug off the street" so there will be "one less MS–13 thug terrorizing the community of southwest Houston." The State also discussed several topics unrelated to the extraneous bad acts, such as how parole works, whether to impose a fine, and the importance of a unanimous verdict. The State's argument emphasized the aggravating facts of the case—the victims are women and children who live in a poor, high crime area—and closed its argument by explaining why twenty years would be an appropriate sentence. After pointing out the difference between the maximum sentences for aggravated robbery and aggravated assault, the State argued this was not a maximum-sentence aggravated robbery case, but "you found him guilty of aggravated assault. So the maximum is 20. And I think 20 is probably slightly less than he deserves, but I think it would be a just verdict in this case."

Appellant's counsel argued that while appellant's behavior was "irrational" and "illogical," it was not as dangerous or severe as other cases. Looking at the broad spectrum of activity and the three reasons for punishing people (retribution, deterrence, and rehabilitation), appellant's counsel asked the jury to sentence him to only five years of confinement. His only challenge to the State's bad acts evidence was

his comment that had appellant been convicted of any crimes the jury "would already have heard about it. So you have to assume that he is not."

We conclude that the arguments of counsel weigh against a holding of egregious harm. The State gave multiple reasons for a twenty-year sentence that were unrelated to the extraneous bad acts. Appellant's counsel left the extraneous-acts evidence largely unchallenged, seeking only to minimize this crime in comparison to other aggravated assaults.

Turning to the jury charge at the punishment phase, although the trial court failed to instruct the jury not to consider evidence of extraneous bad acts unless proven beyond a reasonable doubt, the charge did include a reminder that "the burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant."[3] Neither the parties nor the judge added to the charge error by telling the jury that the State's burden was anything less than beyond a reasonable doubt. See Cosio, 353 S.W.3d at 777. We conclude the general jury charge instruction is a consideration that weighs neither for nor against the conclusion that appellant suffered egregious harm. Martinez, 313 S.W.3d at 367.

Finally, in addressing other relevant information, we may consider the severity of the punishment assessed, which may indicate egregious harm in some situations. Sansom, 292 S.W.3d at 134. Appellant's conviction of a lesser-included offense is relevant. Had he been convicted of the crime charged in the indictment, aggravated robbery, he would have faced a maximum sentence of ninety-nine years' confinement. But the jury convicted him of

---

3. The jury had been instructed in the guilt-innocence phase that this burden required

proof beyond a reasonable doubt.

aggravated assault, which carries a significantly lower maximum sentence of twenty years. Appellant's sentence was the maximum available for this lesser offense, but it was not outside the statutory sentencing range. Although appellant contends the lack of a reasonable-doubt instruction allowed an "angry jury" to "max out" his sentence, the jury's decision to convict him of only a lesser-included offense undermines this argument. We cannot speculate as to what punishment the jury would have assessed had the instruction been provided, but the evidence included several aggravating factors (summarized above) that the jury may have considered in determining the sentence.

Appellant contends that *Ellison v. State* is a factually similar case in which the court found egregious harm from the failure to provide a reasonable-doubt instruction regarding evidence of extraneous bad acts. 97 S.W.3d 698 (Tex.App.—Texarkana 2003, no pet.). At the punishment phase, the State offered evidence that the defendant was a member of a white supremacist group. *Id.* at 700. But multiple witnesses—including the defendant's mother, employer, and another witness—testified they had no knowledge of any such affiliation. *Id.* at 700–01. Given the amount of evidence disputing the defendant's affiliation with the group, the court of appeals concluded that the defendant was egregiously harmed by the trial court's failure to instruct the jury to consider the evidence only if proven beyond a reasonable doubt. *Id.* at 701.

In this case, however, the record contains no evidence disputing that appellant committed and pled guilty to several bad acts while incarcerated. Similarly, although appellant objected to introduction of the gang evidence under Texas Rule of Evidence 403, the state's evidence linking the tattoos to gang membership went largely unrebutted. The jury was not presented with conflicting information on these bad acts. *Cf. id.* (noting that the distinguishing factor in these cases is whether the prior offenses and bad acts of the defendant were proven by overwhelming evidence and were largely undisputed).

Applying the egregious harm standard to this record, we conclude that a review of all relevant factors does not reveal that appellant was egregiously harmed by the omission of a reasonable-doubt instruction regarding evidence of extraneous bad acts. The charge error did not affect the very basis of the case, deprive appellant of a valuable right, or vitally affect a defensive theory. Therefore, the trial court's error was not so egregious as to deprive appellant of a fair and impartial trial. We overrule appellant's first issue.

## II. Appellant did not preserve his challenge to the relevance of the State's gang-related evidence.

In his second issue, appellant argues that the trial court should have excluded the State's gang-related evidence as irrelevant because that evidence did not show appellant was actually a member of a gang. We agree with the State that appellant failed to preserve this issue for our review because he failed to object to the evidence in the trial court on the same basis raised on appeal.

Appellant first objected to the State's reference to any extraneous offenses or bad acts in a pre-trial motion in limine that claimed such evidence would be prejudicial. Before the punishment phase began, appellant's counsel notified the trial court of his intent to object specifically to any photographs or testimony regarding appellant's tattoos or affiliation with any street gang. In both instances, appellant's trial counsel based the objection on Texas Rule of Evidence 403, claiming the evidence would be substantially more prejudicial than probative. Following the objection,

the trial court permitted appellant's counsel to question the State's gang expert on voir dire outside the jury's presence to determine his qualifications.[4] Appellant's counsel questioned Deputy Jackson about his credentials and experience, and the trial court declared Deputy Jackson qualified to testify as an expert on the topic.

After the jury was seated, the State began its direct examination of Deputy Jackson and offered the photos of appellant's tattoos into evidence.

[Prosecutor]: Offer State's 9 through 22 and tender to Defense.

[Defense Counsel]: No objection.

THE COURT: No objection, 9 through 22 are admitted. You may publish.

(State's Exhibits No. 9 through 22 offered and admitted.)

Q: [Prosecutor] Now, if you follow along with me on—

[Defense Counsel]: Excuse me, Your Honor. I didn't mean to interrupt, but I re-urge my previous objection which the Court has—I have no further objections other than my previous one.

THE COURT: All right. It's noted and overruled, and they will be admitted.

To preserve error for appellate review, the record must show that the complaint was made to the trial court by a timely objection, and the issue on appeal must correspond to the objection made at trial. Tex. R. App. P. 33.1(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex.Crim.App.2002). We assume without deciding that appellant made a timely objection to the introduction of gang evidence by reurging his previous objection before the State began questioning Deputy Jackson about the photos.

Appellant's issue on appeal does not correspond to the objection made at trial, however. Although appellant objected on Rule 403 grounds during trial, his argument on appeal is the evidence was not relevant under Texas Rule of Evidence 401. Appellant contends in his brief that the gang evidence was not relevant because the State failed to link appellant sufficiently to the MS–13 gang. By objecting only on Rule 403 grounds at trial, appellant's trial counsel conceded the relevance of the evidence, claiming instead that it was too prejudicial to be admitted. *See Santellan v. State*, 939 S.W.2d 155, 171 (Tex.Crim.App.1997) (holding objection based on Rule 403 did not preserve relevance challenge for appeal). Rule 403 gives a trial court discretion to exclude otherwise relevant evidence when that evidence is "substantially outweighed" by specific countervailing factors. *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim.App.1991); *Rojas v. State*, 986 S.W.2d 241, 250 (Tex.Crim.App.1998) ("When evidence of extraneous offenses or acts is relevant, the trial court is still required to conduct a balancing test if a proper objection is made based on Rule 403.").[5] Because appellant's complaint on appeal does not comport with his objection at trial, we conclude that he has not preserved error. We overrule appellant's second issue.

### III. The trial court did not err in overruling appellant's objection to the State's closing argument.

In his third issue, appellant argues he is entitled to reversal because the

---

4. The trial court permitted this questioning based on a separate pre-trial motion filed by appellant's counsel to qualify any experts outside the jury's presence before they give expert testimony.

5. *See also* Tex. R. Evid. 403 ("The court may exclude *relevant* evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." (emphasis added)).

State engaged in repeated name-calling in closing argument at the punishment phase, referring to appellant as an "MS–13 thug." In light of the entire record before us, the State's argument was a reasonable deduction from the evidence and therefore was not improper jury argument. Accordingly, the trial court did not err by overruling appellant's objection.[6]

 The State may not refer to a defendant using derogatory terms designed to subject him to personal abuse. *Ponce v. State*, 299 S.W.3d 167, 175 (Tex. App.-Eastland 2009) (referring to defendant as a "monster" was improper); *Gilcrease v. State*, 32 S.W.3d 277, 279 (Tex. App.—San Antonio 2000, pet. ref'd) ("Name calling and curse words ... have no place in the administration of justice."). The State may, however, engage in argument that falls within the four approved general areas of jury argument: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to argument of opposing counsel, and (4) plea for law enforcement. *Todd v. State*, 598 S.W.2d 286, 296–97 (Tex.Crim.App.1980).

On the particular facts of this case, referring to appellant as a "MS–13 thug" is a reasonable deduction from the evidence. The trial court admitted evidence regarding appellant's MS–13 affiliation, including

testimony of the gang's criminal reputation. The evidence also showed that appellant threatened women and children with death and serious bodily harm and with a deadly weapon, and the jury had already convicted him of aggravated assault. This evidence could support the State's characterization of appellant as a thug—that is, a "violent person," "criminal," or "a person inclined ... to treat another roughly." *Webster's Third New International Dictionary* 2386 (1993); *New Oxford American Dictionary* 1809 (3d ed.2010).[7] Because the State did not engage in improper jury argument during the punishment phase, we overrule appellant's third issue.

## IV. Appellant has not shown that counsel performed deficiently by failing to object to the State's improper comments on appellant's demeanor.

 In his fourth issue, appellant argues his counsel was ineffective because he failed to object to the State's comments on his demeanor and lack of remorse in closing arguments at the punishment phase. Although the State's comments were improper, on this record, appellant has failed to overcome the strong presumption that counsel's decision not to object fell within

---

**6.** Appellant's failure to object to three of the State's four uses of the term "MS 13 thug" waives his complaint regarding those three uses of the term. Tex. R. App. P. 33.1; *see Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim.App.1996); *see also Nadal v. State*, 348 S.W.3d 304, 319 (Tex.App.—Houston [14th Dist.] 2011, pet ref'd) ("Defense counsel objected to the first statement but not the second. Therefore, appellant did not preserve error regarding the second statement.").

**7.** In an unpublished case, the Fort Worth Court of Appeals addressed the State's reference to the defendant as a "thug" during argument. *Long v. State*, Nos. 2–07–408–CR,

2–07–409–CR, 2009 WL 1372959, at *4 (Tex. App.—Fort Worth May 14, 2009, pet. ref'd.) (mem. op., not designated for publication). The court concluded the State's argument fell within the bounds of proper jury argument because using the term was a reasonable deduction from the evidence. *Id.* "Thug" and "coward," according to the court, were "apt descriptions of someone who enters a business and robs unarmed employees at gun point." *Id.*; *see also Conner v. State*, No. 01–11–00935–CR, 2013 WL 3811487, at *1 (Tex. App.—Houston [1st Dist ] July 18, 2013, no pet.) (mem. op., not designated for publication).

the wide range of reasonable professional assistance.

■ We begin by examining whether the State's comments were improper. To demonstrate that trial counsel's failure to object amounted to ineffective assistance, appellant must first show that the trial judge would have erred in overruling such an objection. *Ex parte Martinez,* 330 S.W.3d 891 (Tex.Crim.App.2011).

■ For the State's jury argument to be proper, it must fall within one of the four approved general areas of jury argument discussed in Part III above. *Todd,* 598 S.W.2d at 296–97. Commenting on a defendant's failure to testify does not fall within any of these categories and violates the Constitutions of both the United States and Texas. *Bustamante v. State,* 48 S.W.3d 761, 764 (Tex.Crim.App.2001); *see* U.S. Const. amend. V; Tex. Const. art. I, § 10. A comment on a defendant's lack of remorse is an impermissible reference to the defendant's failure to testify because only the defendant can testify as to his own remorse. *Swallow v. State,* 829 S.W.2d 223, 225–26 (Tex.Crim.App.1992); *Dickinson v. State,* 685 S.W.2d 320, 322 (Tex.Crim.App.1984) ("You haven't seen one iota of remorse, one iota of shame."); *Elkins v. State,* 647 S.W.2d 663, 667 n. 7 (Tex.Crim.App.1983). The defendant's demeanor while in the courtroom is also an inappropriate subject for the State to discuss because it concerns facts not in evidence. *Davis v. State,* 964 S.W.2d 14, 17 (Tex.App.—Tyler 1997, pet ref'd).

■ We must review the State's language from the jury's standpoint to determine whether it is of such a character that a jury would necessarily and naturally take it to be a comment on the accused's failure to testify. *Madden v. State,* 799 S.W.2d 683, 699 (Tex.Crim.App.1990). The State made the following argument at the punishment phase:

> But the real crux of this is folks like the defendant, they don't care. Don't care. There is nothing there. Look into his eyes. There's nothing there. He doesn't care. MS–13, they think they can do whatever the hell they want. You got in my way. I'm going to hold a gun ... And he does not care. He does not care. I assure you.

■ The State's argument was improper. The jury would naturally have taken the remarks as a comment on appellant's failure to testify on his own behalf to express remorse and acknowledge guilt. Only the defendant may testify as to his contrition or remorse. *Thomas v. State,* 638 S.W.2d 481, 483 (Tex.Crim.App.1982). By repeatedly suggesting that appellant does not care about the crime he committed and directing the jury to look into his eyes, the State commented on something only appellant could have rebutted by testifying. We therefore conclude the trial judge would have erred in overruling an objection, and we next consider whether appellant's trial counsel was ineffective for failing to object.

We review a claim of ineffective assistance of counsel under the two-pronged standard of *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Appellant must first establish that counsel's performance was deficient. *Id.* This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" the Sixth Amendment guarantees. *Id.* Second, appellant must show that the deficient performance prejudiced the defense. *Id.* This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial. *Id.*

Appellant has the burden to prove ineffective assistance of counsel by a prepon-

derance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999). To defeat the strong presumption of reasonable professional assistance, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex.Crim.App.1996).

An appellate court looks to the totality of the representation, rather than an isolated act or omission, in evaluating the effectiveness of counsel. *Ex Parte Felton*, 815 S.W.2d 733, 735 (Tex.Crim.App.1991). Although it is possible that a single egregious error by counsel can constitute ineffective assistance, Texas courts have been hesitant to "designate any error as per se ineffective assistance of counsel as a matter of law." *Thompson*, 9 S.W.3d at 813 (quoting *Jackson v. State*, 766 S.W.2d 504, 508 (Tex.Crim.App.1985)). An appellate court should be especially hesitant to declare counsel ineffective based upon a single alleged miscalculation during what amounts to otherwise satisfactory representation, especially when the record provides no discernible explanation of the motivation behind counsel's actions—whether those actions were of strategic design or the result of negligent conduct. *Id.* at 814. Ordinarily, counsel should have an opportunity to explain his or her actions before being held ineffective. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex.Crim.App.2003).

Appellant's claim is based on an omission: his counsel's failure to object to the State's improper jury argument. The record is silent as to why appellant's trial counsel chose not to object or failed to object because appellant did not file a motion for new trial. To satisfy the first

prong of *Strickland* on a silent record, it must be apparent "that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex.Crim.App.2011); *see also Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex.Crim. App.2005) (conduct "so outrageous that no competent attorney would have engaged in it"). This is not such a case, as it is possible appellant's trial counsel chose not to object based on a reasonable trial strategy. *See Kuhn v. State*, 393 S.W.3d 519, 539 (Tex.App.—Austin 2013, pet. ref'd) ("One such reasonably sound strategic motivation could have been the desire to avoid drawing additional attention to the prosecutor's opinion."); *Pittman v. State*, 9 S.W.3d 432, 436 (Tex.App.—Houston [14th Dist.] 1999, no pet.); *Calderon v. State*, 950 S.W.2d 121, 140 (Tex.App.—El Paso 1997, no writ).[8]

Appellant relies on *Oliva v. State*, a case in which we reversed a judgment due to ineffective assistance of counsel where trial counsel did not object to the State's comment on the defendant's failure to testify at punishment. 942 S.W.2d 727, 733 (Tex. App.—Houston [14th Dist.] 1997), *pet. dism'd, improvidently granted*, 991 S.W.2d 803 (Tex.Crim.App.1998). Although the facts of *Oliva* are similar to those in this case, we did not apply the *Strickland* standard in *Oliva*. Rather, this Court applied the standard prescribed by the Texas Court of Criminal Appeals in *Ex parte Cruz* and *Ex Parte Duffy*. 739 S.W.2d 53, 58 (Tex.Crim.App.1987); 607 S.W.2d 507,

---

**8.** This disposition does not affect appellant's entitlement to submit his ineffective-assistance complaints or other appropriate constitutional complaints for review on the merits in an application for a writ of habeas corpus. *Rylander*, 101 S.W.3d at 111 n. 1; *Bone v. State*, 77 S.W.3d 828, 837 n. 30 (Tex.Crim. App.2002).

514 (Tex.Crim.App.1980).[9] That standard has since been overruled. *Hernandez v. State,* 988 S.W.2d 770, 771 (Tex.Crim.App. 1999).

Prior to *Strickland,* Texas courts relied on *Duffy,* which provided the "reasonably effective assistance of counsel" standard as the sole test in all cases alleging a deficiency in counsel's performance. *See Duffy,* 607 S.W.2d at 513–16. The U.S. Supreme Court later rejected this standard as the sole test and provided a two-prong test that considers the effect the trial counsel's errors had on the defense. *See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. When we decided *Oliva,* Texas courts did not apply *Strickland* to non-capital cases, relying upon language in *Strickland* that left open the question whether the role of counsel in non-capital sentencing proceedings requires "a different approach to the definition of constitutionally effective assistance." *Hernandez,* 988 S.W.2d at 771 (Tex.Crim.App.1999) (citing *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052).

The Texas Court of Criminal Appeals did not abandon this approach until 1999, when it explicitly overruled *Duffy* and *Cruz* and concluded that *Strickland* was the controlling authority for all claims of ineffective assistance of counsel. *Hernandez,* 988 S.W.2d at 772. Because our decision in *Oliva* did not apply the *Strickland* standard, and thus did not consider whether counsel could have had a reasonable trial strategy for not objecting to the State's comment, *Oliva* does not alter our conclusion that appellant failed to prove his claim of ineffective assistance under *Strickland* on this record. We overrule appellant's fourth issue.

***

9. As we explained in *Oliva,* "The standard of review for ineffective assistance of counsel at the punishment phase differs from the *Strickland* test ... [T]he right [to effective assistance of counsel] entitles appellant to counsel

## CONCLUSION

Having overruled each of appellant's issues, we affirm the trial court's judgment.

'reasonably likely to render and rendering reasonably effective assistance.'" 942 S.W.2d at 733 (quoting *Duffy,* 607 S.W.2d at 514 n. 4).