**Affirmed and Memorandum Opinion filed October 21, 2021.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-20-00063-CR

---

**PRENTICE LESTER DAIGLE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 263rd District Court
Harris County, Texas
Trial Court Cause No. 1390244**

---

## MEMORANDUM OPINION

Appellant Prentice Lester Daigle appeals his conviction for felony murder. A jury found appellant guilty and assessed his punishment at life in prison. In a single issue, appellant contends that the trial court erred in failing to instruct the jury sua sponte regarding its consideration of extraneous offense and gang membership evidence introduced during the punishment phase of trial. Because any such error did not cause appellant egregious harm, we affirm.

## Background

Appellant was charged with causing the death of complainant Reginald Haynes by striking him with a deadly weapon, either a knife or unknown object, during the commission of a burglary of a habitation. During the guilt/innocence phase of trial, complainant's wife and stepson and his stepson's girlfriend all testified regarding the home invasion that led to complainant's death.

The stepson, Derrick Abner, testified that in the early afternoon of May 8, 2010, he and his girlfriend were at the family's home when someone knocked on the front door. Through the front window, Abner could see a white pickup truck parked across the street from the house and appellant standing on the other side of the door dressed in what Abner described as formal attire. When Abner opened the door slightly, appellant stated that he was a census worker, but then appellant grabbed Abner by the neck and forced his way into the house. Appellant pulled out a pistol and pushed Abner down against a wall. Appellant then made Abner lead him to his parents' bedroom where appellant instructed Abner to load jewelry and other items into a black bag that appellant had with him.

Appellant forced Abner to lie down on the floor while two other men entered the home. One of the other men then brought Abner's girlfriend, Kasundra Celestine, into the bedroom, and the men tied both Abner's and Celestine's hands behind their backs. The men began asking Abner "[w]here's the safe?" and searching the house and knocking holes in walls with a hammer. Abner saw the men with a second pistol and a shotgun. The family did not have a safe in the house, and Abner told the men that. One of the men accused Abner of lying and started throwing vegetable cans at Abner's head.

After about an hour, Abner's mother, Katherine Haynes, came in through the front door, and one of the men hit her and then brought her into the bedroom,

2

asking her where the safe was. The men then took Abner and Katherine upstairs and placed a rug over them.

At around 5:30, Abner heard his stepfather Richard raise the garage door. When Richard entered the house from the garage, Abner heard fighting, the men yelling, and Richard screaming. Richard told the men, "Please don't kill me." The men were asking Richard where the money was, and Abner heard them shouting amongst themselves to "[r]un the bath water, drown him, cut him, go get the knives . . . stab him, put him in the water, put his head under the water." Richard sounded in pain and continued screaming and pleading for his life. Abner heard water running and then the splashing sound of someone being forced into water.

Several minutes later, it became quiet downstairs, and Celestine walked upstairs and said the men had left. When Abner walked downstairs, he "saw blood everywhere," in the hallway, the laundry room, the bed, the bathroom. He said that the tub was "full of blood." Richard was lying on the floor next to the tub; "he had blood everywhere" on him as well as cuts and looked to have been beaten. Abner used his mother's cell phone to call for help and then ran down the street to a fire station.

Richard was taken by ambulance to the hospital where he later died from his wounds. An autopsy disclosed that he sustained extensive blunt force trauma to his face and head as well as multiple stab wounds to his face, shoulder, and left leg. The forensic pathologist who performed the autopsy testified that although there may have been several causes for Richard's death, "the cause of death was sharp and blunt force injuries."

Abner's testimony was corroborated by that of Celestine and Katherine. A neighbor also reported to a police officer seeing three men exit the house and leave in a white pickup truck. About a year after Richard's death, Abner was shown a

3

video lineup and identified appellant. Appellant was also linked to the crime through DNA testing of samples taken from rubber gloves left at the scene. In the jury charge on guilt-innocence, the trial court instructed jurors that they could find appellant guilty under the law of parties, and the jury found appellant guilty.

During the punishment phase, Frank Lowrance testified that appellant and two other men in a white pickup truck robbed him at gunpoint on January 13, 2011. Lowrance explained that appellant walked up to him from the pickup and asked for directions when another man came "running around with [a] gun." They took his wallet and cell phone and then drove away in the pickup. Lowrance was able to pick appellant out of a photo lineup immediately.

The State also offered the testimony of Adid Kumer, who explained that he only spoke a "little bit" of English. Kumer stated that on November 23, 2012, he was working at a gas station when he had a problem with someone bringing a gun into the store. Kumer asked that person to leave and called the police. The exact nature of Kumer's complainant and whether he positively identified appellant as the person who entered the store with a gun are unclear in the record, perhaps due to Kumer's difficulty with the language and the lack of a translator. Kumer repeatedly said "same guy" but did not appear to identify appellant in court by an article of clothing or otherwise.

Sergeant Chacon testified at punishment regarding appellant's alleged gang affiliation. Chacon explained that he is trained and experienced in the recognition of criminal street gangs and their members. He said that appellant admitted he was in a gang and Chacon established appellant was in the "5-Deuce Hoover Crips," which Chacon described as "a criminal industry" that profits "from burglaries, organized crimes, narcotics, auto theft, robberies, agg robberies. Anything that produces [a] profit but through the criminal element." Chacon also identified

4

photographs of appellant's tattoos, which Chacon said confirmed appellant's membership in that gang.

In the punishment phase jury charge, the trial court did not instruct the jury regarding its consideration of any extraneous offenses or gang membership, and appellant did not object to the lack of such instruction. As stated, the jury assessed appellant's punishment at life in prison.

## *Discussion*

In his sole issue, appellant argues that the trial court erred in failing to instruct the jury sua sponte on its consideration of the extraneous offenses alluded to in Lowrance's, Kumer's, and Chacon's testimony as well as the gang membership referenced in Chacon's testimony. Appellant asserts that he suffered egregious harm as a result. We will begin by looking at the law governing this issue and then will turn to its application in this case.

## I. Governing Law

Appellant insists the trial court should have instructed the jury regarding gang membership in accordance with *Beasley v. State*, 902 S.W.2d 452 (Tex. Crim. App. 1995) (plurality op.), and on reasonable doubt regarding the extraneous offenses under Code of Criminal Procedure article 37.07. That article provides that evidence may be admitted in the punishment phase concerning extraneous crimes or bad acts that are "shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible." Tex. Code Crim. Proc. art. 37.07, § 3(a)(1). This requirement of proof beyond a reasonable doubt for extraneous offenses is "law applicable to the case" for purposes of article 36.14, so a trial court has a sua sponte duty to instruct the jury in accordance with Article 37.07, section 3(a), when there is some evidence of

5

unadjudicated bad acts. *See Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000); *see also* Tex. Code Crim. Proc. art. 36.14 (requiring a trial court to deliver to the jury "a written charge distinctly setting forth the law applicable to the case").

In *Beasley*, the Court of Criminal Appeals addressed the admissibility of evidence of a defendant's gang membership in the punishment phase under a prior version of article 37.07 that did not allow for the admission of evidence of unadjudicated bad acts and thus did not contain the reasonable doubt requirement. *See Beasley*, 902 S.W.2d 456–57; *Orellana v. State*, 489 S.W.3d 537, 542 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). A plurality of the court reasoned that gang membership evidence was admissible because it was relevant to the defendant's character. *See Beasley*, 902 S.W.2d at 456. Under *Beasley*, evidence of gang membership is admissible even if it does not link the accused to the bad acts or misconduct generally engaged in by gang members, so long as the factfinder is (1) provided with evidence of the defendant's membership, (2) provided with evidence of the character and reputation of the gang, (3) not required to determine whether the defendant committed the bad acts or misconduct, and (4) asked only to consider the evidence for the reputation or character of the accused. *Id*. at 457.[1] In the present case, the first two requirements were met, but no jury charge instruction was given relating to requirements three and four.

Even though Beasley was a plurality opinion and article 37.07 was subsequently amended, *see Beham v. State*, 559 S.W.3d 474, 484 (Tex. Crim. App. 2018), we have followed its analysis in subsequent cases dealing with evidence of gang membership in the punishment phase. *See, e.g.*, *Orellana*, 489 S.W.3d at 542 & n.1 (citing cases from this and other courts of appeal applying *Beasley*); *Grant v.*

---

[1] We note that evidence indicating the defendant portrays himself as a gang member may be relevant to the defendant's character in some cases even if the State cannot show that he is actually a member of a gang. *See Beham v. State*, 559 S.W.3d 474, 484 (Tex. Crim. App. 2018).

*State*, No. 14-16-00231-CR, 2018 WL 650414, at *4 (Tex. App.—Houston [14th Dist.] Feb. 1, 2018, no pet.) (mem. op.; not designated for publication).

Despite the evidence of extraneous offenses and gang membership admitted in this case, the trial court did not instruct the jury either under *Beasley* or on reasonable doubt under article 37.07. We assume for purposes of this opinion that the failure to do so was error. *See Grant*, 2018 WL 650414, at *5. Appellant acknowledges, however, that he did not object to the absence of either type of instruction in the charge. When a defendant fails to object to the omission of a jury instruction that is "law applicable to the case," the conviction will be reversed only if the error caused egregious harm. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984); *Orellana*, 489 S.W.3d at 542. A defendant suffers egregious harm if the error prevented him from having a fair and impartial trial. *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011). Errors that result in egregious harm are those that affect the very basis of a case, deprive the defendant of a valuable right, vitally affect a defensive theory, or make the case for conviction or punishment clearly and significantly more persuasive. *Id*. at 490. We must review the whole record to determine if the defendant suffered actual rather than theoretical harm. *See id*. at 489–90; *Orellana*, 489 S.W.3d at 543–44. Accordingly, we will review the entire jury charge, the state of the evidence, the arguments of counsel, and any other relevant information in the record. *See Taylor*, 332 S.W.3d at 489; *Orellana*, 489 S.W.3d at 543–44.

## II. No Egregious Harm from Lack of a Reasonable Doubt Instruction

Appellant asserts that the trial court was required to give a reasonable doubt instruction in the punishment charge because the State introduced evidence from Lowrance and Kumer related to extraneous robberies and from Sergeant Chacon referencing crimes committed by the gang to which Chacon said appellant

belonged. Appellant asserts he was egregiously harmed by the lack of such instruction. Turning first to the state of the evidence, we note that the State's evidence of appellant's guilt was clear, direct, and unimpeached. *See Orellana*, 489 S.W.3d at 544; *Zarco v. State*, 210 S.W.3d 816, 821 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Complainant's son, Abner, gave detailed testimony regarding the home invasion that resulted in complainant's death and positively identified appellant as one of the assailants. Abner's testimony was corroborated and supported by that of his mother and his girlfriend as well as by forensic evidence, complainant's autopsy, and DNA evidence that linked appellant to the crime. Appellant presented no witnesses and no exhibits in his defense.

During the punishment phase, Lowrance's testimony regarding the alleged extraneous robbery was clear, direct, and unimpeached. A police officer testified that Lowrance immediately identified appellant as one of the robbers when shown a photo array. As discussed above, apparently due to his admitted lack of English proficiency, Kumer's testimony was unclear and of minimal value. Sergeant Chacon, who stated he is trained and experienced in gang identification, testified that appellant admitted his gang membership and had several tattoos that confirmed that membership. Chacon did not link appellant to any specific crimes committed by other members of the gang. *See Orellana*, 489 S.W.3d at 544 & n.2 (noting evidence of defendant's gang membership was "clear, strong, direct, and unimpeached" and did not link defendant to specific crimes by other members); *see also Grant*, 2018 WL 650414, at *5–6. Accordingly, the state of the evidence weighs against the conclusion that appellant suffered egregious harm from the omission of a reasonable-doubt instruction. *See Orellana*, 489 S.W.3d at 544.

Turning to the argument of counsel during the punishment phase, we first note that defense counsel's statements were brief and did not reference any of the

8

alleged extraneous offenses or bad acts. The prosecutor's statements focused on the charged crime itself and its impact on complainant's family. Referring to appellant, the prosecutor stated, "This is the type of case, on its own merits, for what happened to [complainant], whether he's ever done anything else in his entire life, that one day should cost him the rest of his life in prison." The prosecutor spoke about complainant's merits as a person and what he went through prior to his death and referenced "the nightmare that [the family has] been living." He also made a plea to protect the community. The prosecutor only briefly mentioned the Lowrance robbery and how appellant "makes his money." Due to the focus on other reasons for requesting a life sentence and bare mention of any extraneous acts, the closing arguments weigh against a holding of egregious harm. *Id*. at 545.

Turning to the jury charge at the punishment phase, although the trial court failed to instruct the jury not to consider evidence of extraneous bad acts unless proven beyond a reasonable doubt, the charge did include a reminder that "[t]he burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant." Neither the parties nor the judge added to any charge error by telling the jury that the State's burden was anything less than beyond a reasonable doubt. Moreover, the jury charge during the guilt-innocence phase of trial, which was given earlier that same day, instructed the jury that the State's burden was beyond a reasonable doubt. We conclude that the jury charges weigh neither for nor against the conclusion that appellant suffered egregious harm. *See Loge v. State*, 550 S.W.3d 366, 383–84 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (reaching same conclusion on similar facts); *Orellana*, 489 S.W.3d at 545 & n.3 (same).

Among the other relevant information that we can consider is the severity of the punishment assessed. *See Loge*, 550 S.W.3d at 385. Although the jury assessed

9

appellant's punishment at the maximum amount of time allowed to them in the charge, it was within the statutory sentencing range for felony murder and does not demonstrate egregious harm to appellant, particularly considering the circumstances of the charged offense. *See id.*

Applying the egregious harm standard to this record, we conclude that a review of all relevant factors shows that appellant was not egregiously harmed by the omission of a reasonable doubt instruction regarding evidence of any extraneous offenses during the punishment phase. The charge error did not affect the very basis of the case, deprive appellant of a valuable right, or vitally affect a defensive theory. *See Taylor*, 332 S.W.3d at 490. Therefore, the trial court's error was not so egregious as to deprive appellant of a fair and impartial trial. *See Loge*, 550 S.W.3d at 385–86.

### III. No Egregious Harm from Lack of a Beasley Instruction

We next examine whether the lack of a *Beasley* instruction in the charge caused egregious harm to appellant. Much of the analysis discussed above regarding the lack of a reasonable doubt instruction also applies here. The evidence establishing appellant's guilt for the crime charged was clear, direct, and unimpeached, as was the evidence regarding appellant's gang membership admitted in the punishment phase. The prosecutor did not explicitly mention appellant's gang membership in his closing remarks, aside perhaps from a statement regarding how appellant "makes his money," but instead focused on the crime charged and its impact on the complainant and his family. Moreover, the charge as given did not exacerbate any error, and the jury's verdict on punishment was within the statutory range and did not demonstrate egregious harm, particularly considering the circumstances of the charged offense. Additionally, we note that the State made no attempt to tie appellant to any other specific crimes

10

attributable to the gang. *See Grant*, 2018 WL 650414, at *6. Considering the totality of the record, any error in failing to give a *Beasley* instruction did not result in egregious harm. *See id*.

## *Conclusion*

Because the record demonstrates that appellant was not egregiously harmed by the trial court's failure to charge the jury under *Beasley* or regarding reasonable doubt pursuant to article 37.07, we overrule appellant's sole issue.

We affirm the trial court's judgment.


/s/    Frances Bourliot
Justice


Panel consists of Justices Bourliot, Zimmerer, and Spain.

Do Not Publish — TEX. R. APP. P. 47.2(b).

11