**Affirmed and Memorandum Opinion filed November 16, 2017.**



In The

# Fourteenth Court of Appeals

## NO. 14-16-00827-CR

## JUSTIN JERELL WILLIAMS, Appellant

### V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1502845**

## M E M O R A N D U M   O P I N I O N

Appellant Justin Jerell Williams appeals his murder conviction, contending that the trial court reversibly erred in explaining the State's burden of proof during voir dire and in admitting gang activity evidence unrelated to appellant during the punishment phase of the trial. We affirm.

### BACKGROUND

Appellant was charged by indictment with the felony offense of murder. The

indictment alleged that on or about December 4, 2014, appellant caused the death of the complainant, Arnold Eugene Radford, by shooting him with a deadly weapon, namely a firearm. Appellant pleaded "not guilty" to the charge.

At trial, the jury heard evidence that Radford and appellant were long-time acquaintances who had lived across the street from each other for many years. Radford was a drug dealer who regularly sold drugs at a Texaco Station on Scott Street in Houston. After appellant and Radford got into an argument about money, appellant got a gun, went to the Texaco Station, and shot Radford in the head and torso, causing his death. A jury found appellant guilty of murder and, after finding one enhancement paragraph true, assessed punishment at 50 years in prison and a $10,000.00 fine. Appellant does not challenge the sufficiency of the evidence supporting the jury's finding of guilt.

## I.     The Trial Court's Comments on Reasonable Doubt

In his first issue, appellant contends that the trial judge's voir dire explanation of the State's burden to prove each element of the charged offense beyond a reasonable doubt left individual jurors to decide for themselves what the standard requires.

During voir dire, the trial court explained to the jury panel the State's burden to prove the defendant's guilt beyond a reasonable doubt:

> Now, beyond a reasonable doubt is great, but our Legislature and our laws do not define it for us. So beyond a reasonable doubt is what is individually in each one of us, and you would have to decide what it means to you. And that is where you are. Now, it's not beyond all doubt. We know that. And the State has to prove each side [sic] and every allegation by that burden of proof of beyond a reasonable doubt.

> So in essence, what we are asking you to do is sit here, listen to the evidence, and decide from the evidence whether the State has

2

proved their case or not. And that is what I ask you to remember. An in that regard, our Legislature, not defining it—well, they did try at one time to define it, but now it's not. It's up to each individual. So you are the exclusive judges of the facts to be proven and the credibility to be given the witnesses.

What that in essence means is you have to judge each witness as they come up here and decide whether you believe all of what they say, some of what they say, or none of what they say. And you decide that. And once you've done that, you would decide what—whether their evidence is true or not true. And that is what you are called upon to do when you are selected on a jury.

Now—excuse me—in any given case, the State has the burden of proving this. Now, until you have decided whether you believe all of their testimony, some of their testimony, or none of their testimony, since you are the finders of whether the witnesses are telling the truth or not, then you decide this case.

Appellant did not object to the trial judge's explanation. The written jury charge authorized the jury to find appellant guilty of murder "[i]f you find from the evidence beyond a reasonable doubt" that he committed the offense, and instructed that "[u]nless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict 'Not Guilty.'" At the conclusion of the trial, the jury found appellant guilty.

Appellant complains that the judge's comments "gave the critical concept of proof beyond a reasonable doubt twelve different 'masters,' each empowered by the judge to decide for himself or herself what the words mean." Consequently, appellant argues, the judge "gave the jurors the power to decide what the law is, rather than receiving guidance on the law from the court."[1]

---

[1] Appellant suggests that it would be preferable to return to including a written definition of "beyond a reasonable doubt" as the Court of Criminal Appeals once required in *Geesa v. State*, 820 S.W.2d 154, 162 (Tex. Crim. App. 1991), but later overruled in *Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000) ("We find that the better practice is to give no definition of reasonable doubt at all to the jury."). As an intermediate appellate court, we lack the

Appellant acknowledges that he did not object to the judge's comments, but contends that the instruction amounted to structural error requiring reversal of the judgment without a harm analysis. *See Sullivan v. Louisiana*, 508 U.S. 275, 281–82 (1993) (holding that constitutionally deficient reasonable-doubt instruction constituted structural error requiring reversal). Alternatively, appellant contends that the instruction constituted fundamental error to be reviewed for egregious harm. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (holding that if no proper objection is made to charge error at trial, appellant is entitled to reversal only if the error caused egregious harm that deprived appellant of a fair and impartial trial); *see also* Tex. R. Evid. 103(e) ("In criminal cases, a court may take notice of a fundamental error affecting a substantial right, even if the claim of error was not properly preserved."). The Court of Criminal Appeals, while not deciding whether appellate courts may review a voir dire comment absent an objection, has explained that a trial court's comments do not constitute fundamental error unless they rise to "such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury." *See Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001).

Appellant argues that the trial judge's explanation "easily allowed any juror to apply a standard which fell short of what is required to satisfy due process." For example, appellant complains that the judge's explanation could lead a juror to conclude that a preponderance standard would be sufficient, since the trial judge "said the juror could make the phrase mean whatever the juror believed it to mean." Appellant also asserts that defense counsel reinforced this constitutional

---

authority to overrule an opinion of the Court of Criminal Appeals. *State v. DeLay*, 208 S.W.3d 603, 607 (Tex. App.—Austin 2006) (citations omitted), *aff'd sub. nom.*, *State v. Colyandro*, 233 S.W.3d 870 (Tex. Crim. App. 2007). In any event, there is no general constitutional prohibition on a trial court defining reasonable doubt. *Victor v. Nebraska*, 511 U.S. 1, 5 (1994); *Paulson*, 28 S.W.3d at 573.

error by echoing the judge's words during closing argument.[2]

This court considered similar comments given by the trial judge in *Latson v. State*, 440 S.W.3d 119 (Tex. App.—Houston [14th Dist.] 2013, no pet.), a case not cited or distinguished by appellant. In *Latson*, the judge explained the State's burden of proof during voir dire this way:

> Now, I've told you that the State has the burden of proof beyond a reasonable doubt. Any idea what beyond a reasonable doubt is? Good, because you know what, the Courts haven't defined what beyond a reasonable doubt is. Several years ago the Court of Appeals tried to come up with a definition that lawyers could use in criminal cases, and they ultimately decided that it wasn't appropriate for them to define beyond a reasonable doubt. Because beyond a reasonable doubt is that kind of proof that *proves to you individually kind of in your heart*, in your mind that the Defendant is guilty; and it's impossible to really define that. I can tell you what it isn't; it's not proof beyond all possible doubt . . . .

*Id*. at 121. The appellant argued that the trial judge's comments tainted the presumption of innocence and thus amounted to fundamental error. *Id.* This court disagreed, noting that the comments did not indicate that the appellant was guilty, apply the burden of proof to the facts of the case, shift the burden of proving appellant's guilt from the State to the appellant, or instruct the jury to follow their hearts and ignore the law. *Id.* Consequently, the court held that the trial court's comments did not constitute fundamental error. *Id.* at 122.

In reaching its conclusion, the *Latson* court relied in part on *Haro v. State*, 371 S.W.3d 262, 266 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). *See*

---

[2] We note that even though defense counsel stated that the determination of reasonable doubt was up to each individual juror, counsel also went on to explain that reasonable doubt was "a really high level" because "you're taking somebody's life away if you convict them and send them to prison." Defense counsel also detailed the kinds of evidence in the case that might cause a juror to have a reasonable doubt.

*Latson*, 440 S.W.3d at 121. *Haro* is particularly instructive because in that case, our sister court addressed a complaint—much like appellant's—that the trial judge's explanation of the meaning of "reasonable doubt" during voir dire amounted to constitutional or fundamental error because the trial judge emphasized that reasonable doubt was what the individual juror believed it to be. *See* 371 S.W.3d at 264–65. The trial judge's comments in *Haro* included the following:

> Now, I mentioned beyond a reasonable doubt a while ago, and that's the standard of proof we employ here in the criminal courts. Some of you have been on civil juries before; the standard there is different. Instead of going through a civic lesson on every standard of proof, let's just deal with the one that we're going to be dealing with and that's beyond a reasonable doubt.
>
> Now, when I first started coming down here to the courthouse back in 1982, . . . we had no definition for reasonable doubt . . . and we told jurors . . . that reasonable doubt is what the individual juror believes it to be. Well, we rocked along just fine that way.
>
> And then the Court . . . of Criminal Appeals decided no, we do have a definition for beyond a reasonable doubt and here it is. And so we [used] that definition for several years. . . . Well, they got to looking at it again and said, you know what, I think we had it right the first time. So, we are back to beyond a reasonable doubt being what the individual jurors believe[ ] it to be. It's not beyond all possible doubt, and the Charge will tell you that, it's beyond a reasonable doubt. So, I can't give you a definition. I can give you some suggestions, kind of get you thinking about it and really tell you what some folks on juries before have told me they thought beyond a reasonable doubt meant to them. But ultimately, you, individually, g[e]t to decide what beyond a reasonable doubt means to you. I've heard people say that it is an intellectual exercise based on reason, common sense and logic. I've heard people say it's something you know in your heart. You listen to everything. You weigh it all. You determine what you believe based on your experience, and you filter it through the law the Court gives you.
>
> I've heard other people say it's something you know in your gut, after

considering everything brought to you, looking and seeing what's credible, what's not, who has reason to fabricate, who does not. It's just something that you feel in your gut after listening to everything clearly. Folks, I would submit to you that it's probably a little bit of all three; but you have to make that decision.

So, I've got two questions for you along these lines. First of all, knowing yourself like no one else knows you, can you determine what beyond a reasonable doubt means to you? Can you do that? Anyone who cannot? All right. And will you hold the State to that burden as to each and every element of the offense charged as the law says you must? Can you do that? All right. Anyone who cannot? Fair enough.

*Id.* at 263–64 (alterations in original).

On appeal, the appellant in *Haro* complained that the trial court's comments amounted to fundamental error because (1) they conditioned the jury to believe that the beyond-a-reasonable-doubt standard was whatever they thought, (2) they diminished the standard by failing to distinguish it from lesser burdens of proof, and (3) the trial court's explanation left the impression that the jury "could have relied on nothing more than a 'gut feeling' in deciding whether he was guilty." *Id.* at 264. The court rejected these arguments, explaining that under Texas law, "each individual juror decides the amount of proof required to meet the threshold of beyond a reasonable doubt." *Id.* at 265 (citing *Murphy v. State*, 112 S.W.3d 592, 597 (Tex. Crim. App. 2003)). Thus, the court held that the appellant "waived error by failing to object to the trial court's comments on reasonable doubt because the trial court's comments do not rise to the level of fundamental error." *Id.*

Appellant asserts that the *Haro* court's holding is "questionable" if the error is of constitutional magnitude and structural, as he contends. Appellant points to *Cage v. Louisiana*, in which the Supreme Court held that a reasonable-doubt instruction in a death-penalty case was constitutionally deficient because a juror could have understood the instruction to permit a finding of guilt on less than a

7

reasonable doubt.[3] *See* 498 U.S. 39, 41 (1990) (per curiam), *disapproved of by Estelle v. McGuire*, 502 U.S. 62, 72 n.4 (1991). Subsequently, in *Sullivan*, the Court concluded that a reasonable-doubt instruction "essentially identical" to the unconstitutional instruction in *Cage* was structural error requiring reversal because it deprived the defendant of the right to a jury verdict of guilt beyond a reasonable doubt. *See* 508 U.S. at 280–282.

Appellant emphasizes that the standard of review applied in *Cage* was that "a reasonable juror could have interpreted the instruction" in such a way as to lead that juror to demand less from the prosecutor than was necessary. *See* 498 U.S. at 41. Appellant contends that, following *Cage*, "the right question to ask is how the judge's comments during voir dire may have affected the thinking of one or more of the jurors," and argues that in this case, the judge's comments "invit[ed] up to twelve different incorrect definitions." But, in *Estelle v. McGuire*, the Court disapproved of *Cage*'s articulation of the standard of review, holding that the proper inquiry is whether, viewing the challenged instruction in the context of the instructions as a whole and the trial record, there is a reasonable likelihood that the jury applied the instruction in a way that violates the United States Constitution. *See* 502 U.S. at 72 & n.4.

---

[3] In *Cage*, the Court explained:

The charge did at one point instruct that to convict, guilt must be found beyond a reasonable doubt; but it then equated a reasonable doubt with a "grave uncertainty" and an "actual substantial doubt," and stated that what was required was a "moral certainty" that the defendant was guilty. It is plain to us that the words "substantial" and "grave," as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable-doubt standard. When those statements are then considered with the reference to "moral certainty," rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.

496 U.S. at 41.

On this record, we conclude that no reasonable likelihood exists that the jury applied the trial court's comments in a way that undermined appellant's constitutionally protected right to a finding of guilt beyond a reasonable doubt. As an initial matter, the trial judge did not suggest that a juror could simply apply whatever standard that juror might personally prefer. Instead, the trial judge correctly explained that reasonable doubt is not "beyond all doubt," but is a standard that requires the State to prove every allegation beyond a reasonable doubt as determined by the jury's determination of the credibility of the witnesses' testimony and the weight of the evidence. *See Latson*, 440 S.W.3d at 121–22; *Haro*, 371 S.W.3d at 265–66; *see also Woods v. State*, 152 S.W.3d 105, 114 (Tex. Crim. App. 2004) (holding that trial court did not err by instructing jury that State is not required to prove guilt beyond all possible doubt); *Marshall v. State*, 312 S.W.3d 741, 743–45 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (holding trial court's voir dire comments did not rise to the level of fundamental error but "simply explained the existing law with regard to reasonable doubt" and therefore timely and specific objections were required to preserve appellant's complaint for appeal). And, unlike the instruction in *Cage*, the judge did not equate reasonable doubt with "grave uncertainty," "actual substantial doubt," or "moral certainty." *See Cage*, 498 U.S. at 41.

Additionally, during voir dire the attorneys for the State and the defense each discussed the meaning of beyond a reasonable doubt. The prosecutor emphasized that the State was held "to a high burden" to prove its case beyond a reasonable doubt, and defense counsel reiterated that the State's burden was "whatever it takes to convince you and how you feel in your mind and in your heart." Having reviewed the voir dire as a whole, the context of the trial court's remarks, and the record in its entirety, we cannot conclude that the trial court's

comments concerning the State's burden of proof beyond a reasonable doubt are constitutionally deficient so as to constitute structural error, or so egregious that they would constitute fundamental error that may be reviewed in absence of a timely and specific objection at trial. We overrule appellant's first issue.

## II.     Gang Evidence Admitted During Punishment Stage

In his second issue, appellant contends that the trial court erred in "admitting a substantial amount of evidence concerning gang activity not related to the appellant at the punishment phase of trial." Appellant argues that the evidence fails to satisfy the first prong of the *Beasley* four-prong test for admissibility of gang activity not linked to the accused. *See Beasley v. State*, 902 S.W.2d 452 (Tex. Crim. App. 1995).

We review a trial court's decision to admit punishment evidence for abuse of discretion. *See Jessop v. State*, 368 S.W.3d 653, 686 (Tex. App.—Austin 2012, no pet.); *Sierra v. State*, 266 S.W.3d 72, 76 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). The trial court abuses its discretion only when its decision lies "outside the zone of reasonable disagreement." *Jessop*, 368 S.W.3d at 686.

During the punishment phase of trial, "evidence may be offered . . . as to any matter the court deems relevant," including evidence of the defendant's reputation or character. Tex. Code Crim. Proc. art. 37.07, § 3(a)(1). Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. *See* Tex. R. Evid. 401. But, even relevant evidence otherwise admissible under article 37.07 is subject to exclusion if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or the needless presentation of cumulative evidence. *See* Tex. R. Evid. 403; *Ellison v. State*, 201 S.W.3d 714, 722 (Tex. Crim. App. 2006).

In *Beasley v. State*, the Court of Criminal Appeals held that evidence of a defendant's gang membership is relevant because it relates to character. 902 S.W.2d at 456. The court determined that membership information alone, however, "may not be enough for the jury to make an informed decision of appellant's character," reasoning that it was also "essential for the jury to know the types of activities the gang generally engages in so that they can determine if his gang membership is a positive or negative aspect of his character, and subsequently his character as a whole." *Id.* Only then could the jury fairly evaluate "how gang membership reflects on the gang member's character." *Id.* Thus, the court held that if the gang is involved in misconduct or illegal activity, it is not necessary to link the defendant to bad acts so long as the factfinder is (1) provided with evidence of the defendant's gang membership, (2) provided with evidence of the gang's character and reputation, (3) not required to determine if the defendant committed the bad acts or misconduct, and (4) only asked to consider the reputation or character of the accused. *Id*. at 457.[4]

During the punishment phase, the State presented Rick Sepolio, an investigator with the Harris County District Attorney's Office, to testify concerning gang activity in the area where Radford was killed. Appellant objected to "all testimony concerning gangs and gang affiliation" on the grounds that it was not relevant, or if relevant, the evidence was more prejudicial than probative under Texas Rule of Evidence 403.[5] The trial court overruled appellant's objections and

---

[4] As explained in *Sierra*, the *Beasley* court relied on an earlier version of the Texas Code of Criminal Procedure that prohibited the admission of unadjudicated extraneous bad acts in the punishment phase. *See* 266 S.W.3d at 79. The *Sierra* court held that under the revised Code, article 37.07, § 3(a) permits evidence of gang affiliation to be introduced during punishment not only as evidence of character or reputation, but also as evidence of a defendant's extraneous crimes or bad acts. *See* 266 S.W.3d at 79.

[5] Appellant also objected to the admission of photographs of appellant's tattoos on the same grounds. On appeal, however, appellant does not complain about the trial court's ruling

allowed him a running objection to Sepolio's testimony.

On appeal, appellant argues that the State's evidence fails to satisfy the first prong of the *Beasley* test because much of the evidence was not linked to appellant or related to his character. Because the *Beasley* standard was formulated to determine whether gang evidence is admissible in the punishment phase as relevant evidence of a defendant's character, we conclude that appellant's relevance objection is sufficient to preserve error as to this issue. *See* Tex. R. App. P. 33.1; *Beasley*, 902 S.W.2d at 455–56; *cf. Orellana v. State*, 489 S.W.3d 537, 547 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (holding that appellant's objection at trial to admission of gang evidence on Rule 403 grounds did not preserve appellate complaint that trial court should have excluded gang-related evidence as irrelevant because it failed to link appellant sufficiently to gang).

Sepolio testified that prior to working at the District Attorney's office, he had worked on gang investigations as an officer with the Houston Police Department. He explained that in 1989, as drive-by shootings, carjackings, and other gang-related crime started to occur in southeast Houston, he obtained permission to start a gang unit in the area including the 7000 block of Scott Street and the Southlawn Apartments. Over time, he identified several gangs in the area, including the Southlawn Posse and the Yellowstone Players. Sepolio testified that the Southlawn Posse and the Yellowstone Players each satisfied law enforcement criteria as a criminal street gang by consisting of three or more individuals with a common identifier, such as tattoos, a bandana or other clothing of a certain color, or committing crimes with a known, documented gang member. Sepolio stated that when the Yellowstone Players first started, they would fight with the Southlawn Posse, but they later declared a truce because the gangs were "mainly about

that the photographs were admissible.

12

business, about making money."

According to Sepolio, the area gangs eventually consolidated and began calling themselves "Scott Block" instead of referring to a specific street or neighborhood, although some also continued to claim their original gang affiliations. Sepolio explained that the gang members regularly participated in the commission of criminal activities, from graffiti to murder, and that the majority of their criminal activities were pursued for the purpose of making money. The gangs' criminal activities included mainly narcotics, but also carjacking, burglaries, robberies, and selling stolen credit cards.

Appellant complains that much of this "wide ranging portrayal of gang activity in southeast Houston" was not shown to reflect on appellant's character. Appellant complains that the State presented no evidence that the gang activity described in the 1980s and 1990s was relevant to any group in which appellant participated; that some or all of the Southlawn Posse members had become part of Scott Block "at the time when Radford and his protégés, possibly including [appellant], were dealing drugs at the Texaco station"; or that the activities of the Yellowstone Players had anything to do with appellant's character.

We disagree that this evidence was not relevant evidence of appellant's gang membership. *See Beasley*, 902 S.W.2d at 456. Appellant acknowledges that Sepolio affirmatively linked appellant to the Scott Block gang by appellant's "Scott Block" tattoo and the area in which he lived and would "hang out" with others. Additionally, Sepolio opined that, based on his information and the tattoos he saw on appellant, he believed that appellant was originally a member of the Southlawn Posse. The State also presented to the jury several pictures of appellant's body, taken by Sepolio, which displayed several gang-related tattoos. One picture of appellant's face showed teardrops under his left eye and a dollar

13

sign by his right eye. Another showed dollar signs in several places on appellant's body, which Sepolio explained signified the importance of money to the gangs, as did another tattoo displaying the letters "MOE," which Sepolio explained stands for "money over everything."

The jury also heard evidence that in 2010, when appellant was fifteen years old, he participated in an armed carjacking. Sepolio was assigned to do a follow-up investigation of the offense after appellant was picked up in the stolen vehicle. Sepolio presented photospreads to the victim, who identified appellant and another person. The victim testified that one evening she had parked her car at an apartment complex where her boyfriend lived, and as she walked to the apartment "some guys" came up to her with guns pointed at her, threatening her and demanding her car keys. She gave them her keys, and they drove away in her car with her belongings. Appellant was later adjudicated delinquent on the offense of aggravated robbery and committed to the Texas Youth Commission. Appellant was then placed in the Giddings State School, a Texas Juvenile Justice Department correctional facility.[6]

Sepolio's testimony identified appellant as a gang member in the criminal street gang known as Scott Block, a gang associated with the commission of crimes ranging from graffiti to murder. He also identified the Scott Block as responsible for narcotics dealing, carjackings, and theft-related crimes. Sepolio's testimony concerning the evolution of the gang culture in Southeast Houston

---

[6] The evidence showed that appellant continued to engage in criminal and violent conduct during incarceration. While at the Giddings State School, appellant was convicted of assault on a public servant, harassing a public servant, and trespassing. Later, while incarcerated at the Harris County Jail, appellant engaged in multiple disciplinary infractions, including assault, fighting, and unauthorized contact with staff members. In one of the incidents, appellant resisted being locked in his cell one night, became disruptive, and struck a detention officer in jaw, causing the officer pain and requiring four stitches.

14

explained appellant's association with both the Southlawn Posse and Scott Block, and was relevant to the development of Scott Block's reputation for violent and illegal activities. Appellant's conviction for a carjacking as a juvenile, Radford's murder, and evidence at trial that appellant engaged in selling illegal drugs, also affiliated appellant with the same type of gang-related offenses. Based on this evidence, the trial court did not abuse its discretion by admitting Sepolio's testimony during punishment because it demonstrated appellant's membership in a gang and the gang's purpose and activities, as relevant to show appellant's character. *See Beasley*, 902 S.W.2d at 456–57; *see also* Tex. Code Crim. Proc. art. 37.07, § 3(a)(1); *Orellana*, 489 S.W.3d at 542 (explaining that *Beasley* holds that gang affiliation evidence is admissible in the punishment phase of trial as evidence of the defendant's character and reputation, even if the evidence does not implicate the defendant in the gang's bad acts or misconduct, so long as *Beasley*'s four factors are met). We overrule appellant's second issue.

## CONCLUSION

We overrule appellant's issues and affirm the trial court's judgment

/s/    Ken Wise
        Justice

Panel consists of Justices Christopher, Brown, and Wise.

Do Not Publish — TEX. R. APP. P. 47.2(b).

15